**FORESUN, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

No. 15946.

United States Court of Appeals
Sixth Circuit.

July 22, 1965.

Richard Katcher, Cleveland, Ohio, for petitioner.

Jonathan Cohen, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Edward Heilbronner, Attorneys, Department of Justice, Washington, D. C., on brief, for respondent.

Before WEICK, Chief Judge, and MILLER and PHILLIPS, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

This is an income tax case involving transactions between two family-owned Ohio corporations and Mrs. Ada Osborn, who is the mother or mother-in-law of the officers and stockholders of petitioner. The taxpayer, Foresun, Inc., is referred to herein as "petitioner." The other corporation, The Stalwart Rubber Company, is referred to as "Stalwart." Mrs. Osborn's husband, now deceased, was the principal stockholder of Stalwart during the years involved in this litigation and her children and their spouses owned practically all of the other Stalwart stock.

The foremost question presented in this court is whether purported interest paid to Mrs. Osborn on a note executed to her by petitioner is deductible under Section 163 of the Internal Revenue Code of 1954, 26 U.S.C. § 163. The commissioner disallowed interest deductions claimed by petitioner for its fiscal years 1956, 1957 and 1958. The Tax Court held that the transactions between petitioner and Mrs. Osborn resulted in a contribution to petitioner's capital, rather than a sale and loan, and that the commissioner properly disallowed the interest deductions.

The facts, which largely are undisputed, are set forth in the opinion of the Tax Court, 41 T.C. 706, and will not be repeated here except in summary.

Mrs. Osborn has never been an officer or director of petitioner and has never taken any part in the conduct of its business. Her husband, who died March 10, 1961, was the principal stockholder of Stalwart. Mrs. Osborn owned common stock in Stalwart during all the years here involved and prior to 1944 also held preferred stock in that corporation. No shares of petitioner's stock were ever issued to her. In 1944 Mrs. Osborn's preferred stock in Stalwart was redeemed in exchange for real estate occupied by Stalwart, and this property thereafter was leased from her. The petitioner corporation was formed in 1949 for the purpose of acquiring this real estate. Mrs. Osborn deeded the property to petitioner for a stated consideration of $225,000, consisting of $25,000 in

cash and a note for $200,000 secured by a second mortgage.

After this transaction, petitioner's capital structure was composed of $2,000 paid-in capital, a $25,000 indebtedness to a bank secured by a first mortgage on this real estate and the improvements thereon, and its obligation of $200,000 to Mrs. Osborn.

In 1953, the indebtedness on the real estate, together with additional improvements thereon, was refinanced by borrowing $150,000 from an insurance company, secured by a first mortgage. Mrs. Osborn surrendered her $200,000 note and released her second mortgage, taking in exchange a new second mortgage note for $200,000. This second mortgage was subordinated to the first mortgage of $150,000, and by agreement with the insurance company was never placed of public record. At the time Mrs. Osborn agreed to accept a new second mortgage on the premises, the existing first mortgage had been almost paid off in full. By accepting the substituted second mortgage she greatly weakened her position as a secured creditor.

Petitioner has paid to Mrs. Osborn annually $12,000, an amount equal to six per cent interest on the face amount of the $200,000 note. No payments have been made on the principal.

The Tax Court held that, although the conveyance to Mrs. Osborn was in the form of a sale of the property to petitioner and the notes and second mortgages were in the form of an ordinary promissory note and mortgage, the substance of the transaction was a contribution by Mrs. Osborn to petitioner's capital, and that she "was really in the position of being a preferred shareholder, not a creditor." The court held that the 1949 "sale" was tax motivated and that there was no intent to create a bona fide indebtedness, saying:

"Despite the testimony of Ada and her son-in-law, Arnold W. MacAlonan, we do not believe that there was ever any intention to make any payments on the principal of the purported note. From the facts of this case, it seems apparent that the shifting of property and papers was nothing more than a transparent tax-savings device to generate interest deductions and a stepped-up basis for the petitioner."

While there is little dispute as to the facts in this case, petitioner challenges the inferences drawn by the Tax Court. It is the function of the Tax Court to draw inferences of which the evidence is reasonably susceptible, and, if necessary, to resolve conflicting inferences. The Tax Court's findings of fact are conclusive unless clearly erroneous. 26 U.S.C. § 7482; Rule 52(a), Federal Rules of Civil Procedure. This rule applies to "factual inferences from undisputed basic facts." Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218. The Tax Court, and not this court, is "the basic fact-finding and inference-making body." Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 293, 66 S.Ct. 120, 124, 90 L.Ed. 78. "If the inferences drawn by the Tax Court are supported by substantial evidence, it is immaterial that different inferences might fairly be drawn from the same evidence." Carpenter v. Commissioner of Internal Revenue, 322 F.2d 733, 736 (C.A. 3), cert. denied, 375 U.S. 992, 84 S.Ct. 631, 11 L.Ed.2d 478.

It is axiomatic in tax cases that transactions between members of a family and family-owned corporations are closely scrutinized. It is also well settled that the substance of the transaction, rather than its form, is controlling. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Consumers Credit Rural Cooperative Corp. v. Commissioner of Internal Revenue, 319 F.2d 475, 478 (C.A. 6); Gooding Amusement Co. v. Commissioner of Internal Revenue, 236 F.2d 159 (C.A. 6), cert. denied, 352 U.S. 1031, 77 S.Ct. 595, 1 L.Ed.2d 599.

"[W]hile numerous criteria may exist as guide lines helpful in making the

final factual determination as to the true character for tax purposes of a transaction, no single factor can be decisive." Moughon v. Commissioner of Internal Revenue, 329 F.2d 399, 401 (C.A. 6). In Wilbur Security Company v. Commissioner of Internal Revenue, 279 F.2d 657, 662 (C.A. 9) and Kruse Grain and Milling Company v. Commissioner of Internal Revenue, 279 F.2d 123, 125–126 (C.A. 9), the court set forth eleven factors to be applied in determining whether amounts paid by a corporation to individuals constitute dividends and not deductible interest, including the intent of the parties, capitalization, payments of interest only, and "whether or not the corporation could have obtained loans from outside lending institutions."

In the present case the Tax Court drew its inference as to the true character of the transaction from (1) the thin capitalization of petitioner and the high ratio of debt to equity, (2) the fact that petitioner never made any payments on the principal of Mrs Osborn's $200,000 note, and (3) the action of Mrs. Osborn in subordinating her note in 1953 to the insurance company's $150,-000 first mortgage, an act which hardly could have been anticipated from an outside lending institution in an arms-length transaction. We hold that this inference was drawn reasonably from the evidence and is not "clearly erroneous."

Petitioner lays strong emphasis upon the fact that Mrs. Osborn was never a shareholder of petitioner corporation, and relies upon the principle that a corporation cannot pay a dividend to a non-shareholder on the theory that she made a contribution to capital. The non-issuance of shares of stock to Mrs. Osborn is not necessarily controlling in determining the character of the transaction for tax purposes. See Motel Company v. Commissioner of Internal Revenue, 340 F.2d 445 (C.A. 2); Wilbur Security Company v. Commissioner of Internal Revenue, supra; cf. Brown Shoe Company v. Commissioner of Internal Revenue, 339 U.S. 583, 589, 70 S.Ct. 820, 94 L.Ed. 1081.

We therefore affirm that part of the decision of the Tax Court which holds that the payments of purported interest by petitioner to Mrs. Osborn were properly disallowed as deductions by the commissioner. For the same reasons hereinabove set forth we also affirm the decision of the Tax Court in disallowing deductions of interest paid by petitioner to three other individual note holders. Reference is made to the decision of the Tax Court for the details of these transactions. 41 T.C. 706.

Only one other issue remains to be determined. The Tax Court held that petitioner's basis in the property for depreciation purposes should be Mrs. Osborn's adjusted basis of $27,500 rather than the $218,025 adjusted "sale" price used by petitioner. Petitioner contends that the correct basis is $218,025, but in any event that its basis should be increased by the $25,000 actually paid to Mrs. Osborn at the time of the "sale" and the "interest" payments of $12,000 paid to her each year.

Respondent agreed at the hearing before this court that petitioner's basis should be increased by the $25,000 paid to Mrs. Osborn at the time of the "sale."

Since we affirm the holding of the Tax Court that the transaction was an equity investment, and that the $12,-000 annual payments of "interest" were in the nature of dividends, we hold that these annual payments did not operate to increase petitioner's depreciation basis.

The decision of the Tax Court is modified so as to increase petitioner's depreciation basis from $27,500 to $52,-500, thereby reflecting the $25,000 paid by petitioner to Mrs. Osborn at the time of the "sale."

As thus modified, the decision of the Tax Court is affirmed. The case is remanded to the Tax Court for revision of its decision so as to reflect the change in petitioner's depreciation basis.