The Piedmont Corporation v. Commissioner.
Piedmont Corp. v. Commissioner
Docket No. 4990-65.
United States Tax Court
T.C. Memo 1966-263; 1966 Tax Ct. Memo LEXIS 19; 25 T.C.M. (CCH) 1344; T.C.M. (RIA) 66263; December 6, 1966
*19 Burnett and Loewenstein acquired valuable option rights to purchase a tract of land. They owned all the stock of the petitioner, which acquired the option rights from them. Before this acquisition, the petitioner had a total paid-in capital of $60. They [Burnett and Loewenstein] received in return for the option rights the unsecured promissory notes of petitioner in the amount of $160,000 plus $10,000 cash. Held: The transfers of the option rights were equity contributions, and the promissory notes are regarded for tax purposes as preferred stock. The transactions are governed by sec. 351, I.R.C. 1954, and the basis provisions of sec. 362 are applicable. Held further: Payments of purported interest on the "notes" were in reality dividends on preferred stock and not deductible by petitioner. Claude C. Pierce, 440 W. Market St., Greensboro, N. C., and Jerry W. Amos, for the petitioner. Harvey S. Jackson, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: Respondent determined deficiencies in income tax of petitioner, The Piedmont Corporation, for its taxable years ending April 30, 1960, April 30, 1961, and April 30, 1962, in the respective amounts *20 of $22,993.73, $1,257.91, and $7,031.29. The primary issue in this case is whether the assignment to petitioner of certain option rights held by its sole stockholders in return for $10,000 cash and $160,000 in unsecured promissory notes constituted a bona fide sale or a contribution to capital. If such assignment was a contribution to capital, a second issue is whether the assignment was a transfer within the meaning of section 351 of the Internal Revenue Code of 1954[1] and whether, therefore, the basis provisions of section 362 are applicable. Also, the question is presented of the deductibility of "interest" payments by petitioner on such notes during the taxable years at issue. Findings of Fact Some of the facts were stipulated, and those facts are so found. Petitioner is a North Carolina corporation with its principal office at Greensboro, North Carolina. For the taxable years at issue, petitioner filed its income tax returns, using the accrual method of accounting, with the district director of internal revenue, Greensboro, North Carolina. Petitioner was organized on October 13, 1949, but remained dormant with *21 nominal assets until November 14, 1957. During this period, a North Carolina franchise tax report was filed each year to keep the corporate structure intact. Oscar W. Burnett ("Burnett") has been associated with petitioner since its organization. During petitioner's dormant period, Burnett held one share of petitioner's stock with a par value of $10, which Burnett had purchased for $10. Petitioner's total issued and outstanding stock, since its organization, has consisted of six shares of $10 par value stock. In March of 1953, Edward Loewenstein ("Loewenstein") informed Burnett that Mrs. Julius Cone ("Cone"), Loewenstein's mother-in-law, was interested in selling her residence and adjoining land, consisting of approximately 11 acres (hereafter referred to as the "Cone property"). Cone agreed to offer the property for $65,000, and she wanted Loewenstein to have an interest in the property so that he might share in any profits to be derived from its development. Since Loewenstein, an architect, had relatively little business experience and Burnett was experienced in both investments and real estate development, the three parties discussed means of allowing both Loewenstein and Burnett *22 to share in the development of the land. Loewenstein suggested to Burnett that some arrangement to purchase the Cone property might be worked out through Bessemer Improvement Company ("Bessemer"). Bessemer was engaged in the business of developing property in the vicinity of the Cone property, and Bessemer would pay a substantial sum of money to obtain control of the Cone property. At all times relevant to this case, Burnett was the principal officer of Bessemer and the owner of 50 percent of its capital stock. Burnett's wife owned the other 50 percent of the stock. In July of 1953, Bessemer acquired title to the Cone property through a transaction that involved an exchange with a third party. The third party had wanted to buy a particular piece of property from Bessemer, and in exchange for this property paid its purchase price to Cone. Cone then transferred the Cone property to W.A. Stern, a trustee, who in turn transferred it to Bessemer. In September of 1953, Bessemer gave Loewenstein and Burnett an option to purchase the Cone property for the sum of $67,000. The option was for 10 years, but Loewenstein and Burnett could extend the option for an additional 10 years by the payment *23 of $500. Bessemer was entitled to develop the property and make improvements and erect buildings thereon, and the purchase price under the option would be adjusted accordingly. For purposes of the option, the Cone property was divided into four separate tracts. The purchase price under the option for Tract No. 1 was $30,930; for Tract No. 3, $10,300; for Tract Nos. 2 and 4, combined, $25,770. On November 14, 1957, Burnett acquired, for $20, two shares of petitioner's capital stock, and Loewenstein acquired the remaining three shares for $30. Burnett and Loewenstein have owned in equal shares all of petitioner's issued and outstanding capital stock from November 14, 1957, to the time of the trial of this case. During this time, petitioner's paid-in capital remained at $60. After November 14, 1957, the board of directors of petitioner consisted of Burnett, Loewenstein, and W. F. Williams. W. F. Williams resigned on May 31, 1961, and was replaced by Ernest H. Pittman. At all times relevant to this case, Burnett was president and Loewenstein was vice president of petitioner. Burnett and Loewenstein held their option on the Cone property until the fall of 1957. In the late summer and fall *24 of 1957, a very substantial area adjacent to the Cone property was acquired for the construction of a shopping center, which opened in 1959. At the time Burnett and Loewenstein acquired all of the capital stock of petitioner, on November 14, 1957, negotiations were already in progress concerning the sale of a lot from the Cone property. On November 14, 1957, a special meeting of the board of directors of petitioner was held at which the officers were authorized to acquire a portion held by Burnett and Loewenstein for $60,000, to be paid for by two unsecured notes for $30,000, one note payable to Burnett and one note payable to Loewenstein. The notes were each payable in $5,000 annual installments on November 22, 1958, to November 22, 1963, inclusive, with interest at 5 percent per annum. The officers were authorized to exercise the option rights with Bessemer and acquire title to Tract Nos. 2, 3, and 4 of the Cone property for a total price of $38,424.18. At that time, it was estimated by petitioner's officers that it would cost the petitioner at least $24,265 to develop the three tracts by putting in a street with sewers, curbs, and gutters. The assignment of the portion of the option *25 to petitioner by Burnett and Loewenstein was carried out on November 22, 1957. Petitioner immediately exercised such portion to purchase Tract Nos. 2, 3, and 4, and by deed dated November 22, 1957, Bessemer conveyed those tracts to petitioner subject to a deed of trust dated July 10, 1953, securing a note in the principal amount of $10,000, plus accrued interest, in favor of Sidney J. Stern, Jr., trustee. On December 9, 1957, petitioner gave Bessemer an unsecured promissory note in the principal amount of $11,070, with interest at 5 percent payable annually. The principal of the note was to be paid in annual installments through December 9, 1963. On March 3, 1958, a special meeting of the board of directors of petitioner was held at which the officers were authorized to acquire a portion of the option held by Burnett and Loewenstein covering part of Tract No. 1 for $70,000, to be paid for by two unsecured notes for $35,000, one note payable to Burnett and one to Loewenstein. The notes were each payable in $5,000 annual installments on March 3, 1959, to March 3, 1965, inclusive, with interest at 5 percent per annum. The officers were authorized to exercise the option rights and pay *26 Bessemer $20,000 for this portion of the land. The assignment of the option was carried out on March 3, 1958. Petitioner immediately exercised the right to purchase that part of Tract No. 1 pursuant to the assigned option, and by deed dated March 10, 1958. Bessemer conveyed the part of Tract No. 1 to petitioner in exchange for petitioner's unsecured promissory note in the principal amount of $20,000 with interest at the annual rate of 5 percent. The note was payable on or before March 10, 1959. On March 16, 1960, Burnett and Loewenstein assigned to petitioner their option covering the remaining portion of Tract No. 1 in return for a cash payment of $5,000 each and petitioner's unsecured notes in the principal amounts of $15,000 each. The notes provided for interest at the annual rate of 5 percent, and annual principal payments were due on March 16, 1961, to March 16, 1963, inclusive. Petitioner immediately exercised the right to purchase the remaining portion of Tract No. 1 pursuant to the assigned option. Cash in the sum of $10,930 was due Bessemer on the contract price for the Cone property, but, by deed dated March 16, 1960, petitioner conveyed back to Bessemer a parcel of the *27 Cone property that petitioner had acquired on November 22, 1957, in exchange for the remaining portions of Tract No. 1. Also on March 16, 1960, petitioner agreed to pay Bessemer $5,594.55 in satisfaction of taxes, insurance, and caretaking expenses incurred by Bessemer in connection with the Cone property. The consideration given by petitioner to Burnett and Loewenstein for each portion of the option it received was equivalent to, or less than, the fair market value of each portion. Petitioner had gross sales of real estate in the total amount of $37,500 for the taxable year ended April 30, 1958, $123,843.50 for the taxable year ended April 30, 1959, $74,500 for the taxable year ended April 30, 1960, no sales for the taxable year ended April 30, 1961, and $74,573.75 for the taxable year ended April 30, 1962. Petitioner also exchanged parcels of the Cone property for other property during such years. Petitioner, by May 20, 1958, had paid in full the unsecured promissory note in the principal amount of $11,070 it had given to Bessemer on December 9, 1957. The first installment on this note had not been due until December 9, 1958. On May 23, 1958, petitioner paid in full the unsecured *28 promissory note in the principal amount of $20,000 it had given the Bessemer on March 10, 1958. During the taxable years ended April 30, 1958, through April 30, 1964, petitioner paid to Burnett and Loewenstein interest in the total amount of $26,633.56 and, as payments of the principal sums due on each of its promissory notes, the amounts shown in the following schedule: $30,000 Note
$35,000 Note
$15,000 Note
dated 11/22/57
dated 3/ 3/58
dated 3/16/60
Amount
Amount
Amount
Amount
Amount
Amount
Date
due
paid
due
paid
due
paid
2/17/58
$ 2,000
6/13/58
6,500
11/22/58
$ 5,000
12/29/58
$10,000 *
3/ 3/59
2,000
$ 5,000
5/ 6/59
5,000
10/ 1/59
2,500
11/22/59
5,000
12/ 4/59
5,000 **
3/ 3/60
5,000
10/28/60
5,000
11/22/60
5,000
3/ 3/61
5,000
3/16/61
$ 5,000
7/ 6/61
6,000
11/22/61
5,000
1/30/62
$5,000
3/ 3/62
5,000
3/16/62
5,000
11/22/62
5,000
3/ 3/63
5,000
3/16/63
$ 5,000
5/10/63
$3,000
9/10/63
$ 3,500
10/ 8/63
$ 1,500
11/22/63
$ 5,000
3/ 3/64
$ 5,000
3/ 3/65
5,000
$30,000
$24,000
$35,000
$25,000
$15,000
$8,000 From the time *29 of its formation to the present time, petitioner has not declared or paid any formal dividends to its stockholders, nor has petitioner paid any salaries to its officers. Petitioner reported as taxable income on its tax returns $25,436.33 for the taxable year ended April 30, 1960, $791.54 for the taxable year ended April 30, 1961, and $9,249,42 for the taxable year ended April 30, 1962. Petitioner had an accumulated earned surplus in each of the taxable years ended April 30, 1958, through April 30, 1962, both before and after it had made payments on the promissory notes given to Bessemer, Burnett, and Loewenstein. Petitioner's books of account reflect that it recovered through "cost of land sold" for the taxable years ended April 30, 1958, and April 30, 1959, approximately 75 percent of the $60,000 attributed to the option acquired from Burnett and Loewenstein on November 22, 1957, and approximately 25 percent of the $70,000 attributed to the option acquired from Burnett and Lowenstein on March 3, 1958. In the notice of deficiency, respondent reduced the basis of the property described in the options that petitioner sold during the taxable years ended April 30, 1960, April 30, 1961, *30 and April 30, 1962, in order to not only eliminate the remaining option costs, but also to recapture the option costs used by petitioner in computing its profit on realty sales for each of the taxable years ended April 30, 1958, and April 30, 1959. Petitioner also attributed portions of the purported "price" paid for the options to the cost of land sold on its Federal income tax returns for the taxable years ended April 30, 1958, through April 30, 1965. In addition, petitioner deducted the interest payments on its promissory notes to Burnett and Loewenstein in computing its income taxes for those taxable years. On their individual income tax returns for the years 1958 through 1962, Burnett and Loewenstein reported the amounts received from petitioner as payments of principal on the notes as long-term capital gain from an installment sale. The amounts received by Burnett and Loewenstein as payments of interest were reported on their tax returns as interest income. Opinion The primary issue in this case is whether the assignments of portions of the option on the Cone property by Burnett and Loewenstein to petitioner were bona fide sales or whether they were transfers to a controlled *31 corporation within the meaning of section 351. Petitioner contends that it purchased the options from Burnett and Loewenstein, giving its valid promissory notes in return for the options. Petitioner therefore maintains that its interest payments on such notes are deductible and that its basis for the land acquired by it should include the cost of the options. Respondent contends that the purported sales of the options were not bona fide and that Burnett and Loewenstein in reality placed whatever value the options might have had at the risk of petitioner's business, a contribution to capital. In cases like this, our objective is to look at all the circumstances surrounding the transfer of property to the corporation to ascertain whether the transfer is in effect a sale or a contribution of capital. Burr Oaks Corp., 43 T.C. 635 (1965), affd. 365 F. 2d 24 (C.A. 7, 1966); Emanuel N. (Manny) Kolkey, 27 T.C. 37 (1956), affd. 254 F. 2d 51 (C.A. 7, 1958). Although there were three transfers of property in the case before us, petitioner does not argue that each such transfer should be treated separately and independently of the others. Petitioner has instead presented his case as if *32 our decision as to the first transfer would be dispositive of the issues as to all three transfers. Consequently, we shall judge all transfers by the circumstances existing at the time of the first transfer. At the outset, we observe that the notes given in exchange for the property contain an unconditional promise to pay sums certain in money and that they include maturity dates which are fixed and not unreasonably delayed. They do not provide the holder with any voting rights. They do provide for the payment of interest which is not excessive, which is not dependent upon earnings, and which is due at a fixed time. In all these respects, the notes appear to create genuine indebtedness. The notes were not subordinated to the payment of other creditors. The payment of many obligations of the petitioner was accelerated, and the notes due Bessemer were generally paid in advance of the notes payable to Burnett and Loewenstein; nevertheless, the payments on the Burnett and Loewenstein notes were generally made on time until the respondent questioned whether the notes were valid. Thus, we do not have a situation in which in form the notes have been subordinated to the claims of other creditors, *33 nor in which in practice their payment has been postponed beyond the due dates in order to pay the claims of other creditors. Compare, Foresun, Inc., 41 T.C. 706 (1964), affd. 348 F. 2d 1006 (C.A. 6, 1965); Gooding Amusement Co., 23 T.C. 408 (1954), affd. 236 F. 2d 159 (C.A. 6, 1956), cert. denied 352 U.S. 1031 (1957). In these circumstances, we cannot infer that the notes have been subordinated in such a way as to indicate that they represent equity rather than debt. The prices purportedly paid for the option were not excessive. The larger the amount received for the transfer of the property the greater is the amount that can be treated as capital gain, and when the amount of the note significantly exceeds the value of the transferred property, that fact tends to indicate that the transfer was not a bona fide sale. Burr Oaks Corp., supra; Emanuel N. (Manny) Kolkey, supra. However, we have found that in this case the amount of the notes did not exceed the value of the option. Hence, the relationship between the amount of the notes and the value of the transferred property also supports a finding that the transfer was a sale. On the other hand, it is significant that Burnett *34 and Loewenstein received the notes in the same proportion as they owned stock in the corporation. Each owned one-half of the stock, and each received one-half of the notes. From this situation alone, we would not infer the notes represented an equity interest in the corporation. Yet, if the notes had been held in different proportions than the stock was owned, that fact would have strongly suggested that the notes were valid. Charles E. Curry, 43 T.C. 667 (1965), acq. 1965-2 C.B. 4. Accordingly, the fact that they held the notes in the same proportion as they held the stock is consistent with a conclusion that the notes represent an equity interest in the corporation. What this case turns upon, finally, is the lack of any significant capital in the corporation prior to the transfer of the options. See, Burr Oaks Corp., supra; Aqualane Shores, Inc., 30 T.C. 519 (1958), affd. 269 F. 2d 116(C.A. 5, 1959). We have found that before the corporation acquired the options, it had only $60 of capital. There was, accordingly, no significant capital cushion. The ability of the corporation to meet its obligation under the notes depended upon the success of the development and sale of the *35 land. Although the surrounding land had already been developed in part and sold, no one could be sure that the Cone property could be developed and sold for enough to meet the costs of the land paid to Bessemer, the expenses of developing the land, and the prices fixed for the portions of the option. If the land could not be sold for an amount in excess of all such costs, then the corporation could not satisfy fully all of its obligations. Since Burnett and Loewenstein had identical interests in the notes and the stock, it seems reasonable to infer that if the corporation had been unable to satisfy all of its obligations, the notes to them would have been subordinated. Thus, the option was in effect put at the risk of the business and was in effect a contribution of capital. This case is distinguishable from a situation in which there is a significant amount of capital. When there is some capital, there is some cushion to protect the holders of obligations of the corporation. In such a situation, it may be possible to find that a transfer of property in exchange for notes is a bona fide sale, notwithstanding that there may be a high ratio of debt to equity, Charles E. Curry, supra; *36 Ainslie Perrault, 25 T.C. 439 (1955), acq. 1956-1 C.B. 5, but it seems impossible to reach such a conclusion when there is no capital cushion. This case is also distinguishable from Sun Properties v. United States, 220 F. 2d 171 (C.A. 5, 1955). Although there was no significant capital contribution in that case, the property transferred to the corporation in exchange for notes already had a history of earning substantial income. For that reason, the holders of the notes took less risk than in the case before us. In summary, although in many respects the notes given to Burnett and Loewenstein resemble genuine indebtedness, we have concluded that the transfer of the option was in effect a contribution of capital, since the petitioner lacked any significant amount of capital and therefore the corporation's ability to pay the notes wholly depended upon the success of a new and speculative enterprise. The promissory notes received by Burnett and Loewenstein must be regarded as evidencing an equity investment. Since Burnett and Loewenstein as holders of these notes would occupy a preferred position to the holders of petitioner's common stock should such stock be transferred to third *37 parties, the notes, for tax purposes, can be classed as preferred stock. Burr Oaks Corp., supra. Since we have found that, in reality, the notes issued by petitioner to Burnett and Loewenstein were preferred stock, the socalled "interest" paid on the notes was a nondeductible dividend on preferred stock. Petitioner refers to Campbell v. Carter Foundation Production Company, 322 F. 2d 827 (C.A. 5, 1963), for the proposition that even if we should find that the transactions were transfers within the meaning of section 351, the interest on the indebtedness could still be deductible. However, the court in that case found a bona fide indebtedness whereas we have not been able to find such. It follows also that since we have found the notes issued to Burnett and Loewenstein to be preferred stock, the transactions in which the portions of the options were turned over to petitioner are clearly within section 351. Burr Oaks Corp., supra. In pertinent part section 351(a) provides: (a) * * * No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange *38 such person or persons are in control (as defined in section 368(c)) of the corporation. * * * Petitioner's only argument with regard to section 351 is that even if no bona fide sales took place, the promissory notes issued to Burnett and Loewenstein constituted indebtedness, not securities or stock. Our finding that the notes constituted preferred stock disposes of this argument of petitioner. In the assignment of the third portion of the option, Burnett and Loewenstein each received $5,000 in cash from petitioner. The parties agree that this $10,000 total payment by petitioner should increase by that amount petitioner's basis in the Cone property. Section 362(a). Petitioner makes a final argument based on a stipulated fact. This fact is that: In the statutory notice of deficiency, the respondent has reduced the basis of the property described in said options that petitioner sold during the taxable periods ended April 30, 1960, through April 30, 1962, so as to not only eliminate the remaining "option costs", but to recapture also the "option costs"' used by petitioner in computing its profit on realty sales for each of the taxable periods ended April 30, 1958, and April 30, 1959. Petitioner *39 contends that this statement means that respondent reduced the basis for the property sold in the years ending April 30, 1960, 1961, and 1962, by an excessive amount, thereby not allowing petitioner its full basis (the amount paid to Bessemer for the property plus the cost of any improvements) for the lots sold in those years. In effect, petitioner contends that this action of respondent results in a readjustment of its tax for the years ending April 30, 1958, and April 30, 1959 - years that are not before the Court. We are unable to tell, from an examination of the notice of deficiency, whether petitioner's contention is true. However, respondent admits in his brief "that the elimination of the 'option costs' from the basis of the land would ultimately serve to recapture all option costs erroneously included in the 'cost of land sold' in prior taxable years". Respondent objects to this issue being raised since petitioner first raised the issue in its original brief rather than its pleadings. However, from an examination of his argument in his reply brief, respondent does not appear to be surprised by the raising of this issue. Respondent argues the merits of the issue in his reply *40 brief. Since the issue of allocation of basis is not the type of issue that requires the opportunity to present evidence, we do not believe that respondent would be at all prejudiced by its consideration. We believe that it is a well-settled rule that even though a taxpayer uses an incorrect basis for his sales in one year - a year that for some reason is not open to adjustment - he is entitled to use a correct basis in computing his gains in future years. In other words, each taxable year is to be considered separately, and a taxpayer is entitled to use his correct basis for all property sold in that year. Respondent cannot correct the errors of a prior tax year by making an adjustment in basis for the year before the Court. Commissioner v. Cedar Park Cemetery Ass'n, 183 F. 2d 553 (C.A. 7, 1950), affg. a Memorandum Opinion of this Court; Commissioner v. Laguna Land & Water Co., 118 F. 2d 112 (C.A. 9, 1941), affg. on this point a Memorandum Opinion of this Court; Leonard C. Kline, 15 T.C. 998 (1950), acq. 1951-2 C.B. 3. As applied to this case, the rule is simply that petitioner, for the taxable year ending in 1960, is entitled to use its correct basis for lots sold during that *41 year. The same is true for the other taxable years before the Court regardless of the fact that petitioner used, for taxable years ending before 1960, an incorrect basis for its lots sold in those years due to the erroneous inclusion in its basis of the purported cost of the options. For each taxable year before the Court, respondent can eliminate from the basis of lots sold by petitioner in that year that portion of the "cost" of the option attributed by petitioner to such lots sold. But respondent cannot recover option "costs" erroneously used by petitioner in computing its basis for lots sold in a prior year by eliminating from the basis of lots sold in years before the Court a greater portion of the option "costs" than is properly attributable to such lots. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
*. $10,000 was paid to Loewenstein on December 29, 1958, but payment in this amount was not made to Burnett until January 2, 1959. ↩
**. $5,000 was paid to Loewenstein on December 4, 1959, but payment in this amount was not made to Burnett until March 16, 1960.↩