Trans-Atlantic Company v. Commissioner.
Trans-Atlantic Co. v. Commissioner
Docket No. 800-68.
United States Tax Court
T.C. Memo 1970-307; 1970 Tax Ct. Memo LEXIS 53; 29 T.C.M. (CCH) 1414; T.C.M. (RIA) 70307; November 3, 1970. Filed *53 James M. Carter, for the petitioner. Giles J. McCarthy, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined deficiencies in the income tax of petitioner for the taxable years ended January 31, 1964, 1965, and 1966 in the respective amounts of $7,849.50, $7,336.73, and $6,662.61. The sole issue to be decided is whether respondent has erred in disallowing as interest deductions the amounts paid by petitioner for each year which are designated as interest by certain debenture bonds and promissory notes issued by petitioner. Findings of Fact Such facts as have been stipulated are found as fact. Petitioner is a Pennsylvania corporation with its principal office now and at the time of the filing of the petition at Philadelphia, Pennsylvania. It keeps its books and prepares and files its Federal corporation income tax returns on an accrual method of accounting and on a fiscal year basis ending on January 31. It filed its returns for the taxable years ended January 31 of 1964, 1965, and 1966 with the district director of internal revenue at Philadelphia, Pennsylvania. Petitioner was incorporated on February 1, 1956, for *54 the purpose of engaging in the business of importing and jobbing hardware goods. Petitioner's purchases of hardware goods from foreign suppliers and manufacturers have been during the years at issue customarily paid for by letters of credit issued by domestic banks and transferred to foreign banks. Upon incorporation, petitioner succeeded to the assets and liabilities of a partnership composed of Benjamin Greenstein (hereinafter sometimes referred to as Benjamin), Norman A. Millman (hereinafter sometimes referred to as Norman), and Carl A. Molk. The balance sheet showing the transfer of partnership capital and liabilities to capital stock and debentures of petitioner were recorded on petitioner's books as follows: Partnership of Benjamin, Norman, and Carl Molk
Name
Capital
Loans
Benjamin Greenstein
$21,412.59
$ 541.17
Carl Molk
12,826.24
1,120.00
Norman Millman
23,934.49
501.42
Ralph Millman [1]
7,564.09
Daher Company [2]
2,100.00
Total
$58,173.22[sic]
$11,826.88
*55 Trans-Atlantic Company
10 percent
Name
Stock
10-year debenturebonds
Benjamin Greenstein
$15,000
$ 8,000
Norman Millman
15,000
8,000
Carl Molk
15,000
Ralph Milliman
9,000
Total
$30,000
$40,000
Petitioner was originally capitalized at $30,000. One hundred shares of no par value Class A voting stock (stated value 1415 $75 per share), and 300 shares of no par Class B nonvoting stock (stated value $75 per share) were issued as follows: Shareholder
Class A shares
Class B shares
Benjamin
50
150
Norman 50
150
Total
100
300
On February 1, 1956, petitioner issued 10-year, 10 percent debenture bonds in the total amount of $40,000 as follows: Debenture holder
Amount
Benjamin Greenstein
$ 8,000
Norman Millman
8,000
Carl Molk
15,000
Ralph Millman 9,000
Total
$40,000
On March 1, 1956, Benjamin transferred by gift $4,000 in debenture bonds to his son Herman (age 15 at the time), and $4,000 in debenture bonds to his daughter Blanche (age 17 at the time). A typical debenture bond of petitioner was worded as follows: TRANS-ATLANTIC COMPANY 10% DEBENTURE Trans-Atlantic Company, a corporation *56 created and existing under the laws of the Commonwealth of Pennsylvania, hereby agrees to pay to [named holder] the sum of ONE THOUSAND DOLLARS at the office of the corporation on the first day of February, 1966, with interest thereon from the first day of February, 1956 at the rate of 10% per annum, payable monthly on the first day of each month beginning with the first day of March, 1956. This debenture may, at the option of the corporation, be redeemed upon thirty days' notice to the holder hereof, at its face amount, plus accrued interest to the date of redemption. If less than all of the debentures of the corporation outstanding are called for redemption, those to be called shall be selected by lot in such manner as may be prescribed by the Board of Directors. This debenture shall pass only by transfer on the books of the corporation. In Witness Whereof, Trans-Atlantic Company has caused this debenture to be signed in its corporate name by its proper officer, its corporate seal to be hereto affixed and attested as of the first day of February, 1956. TRANS-ATLANTIC COMPANY
Attest: By President Secretary Norman and his wife Ronnie have two children, Jeffrey *57 (age 22), and Laurie Jayne (age 12). Other relatives of Benjamin Greenstein are as follows: Name
Relationship
Morris Greenstein
Brother
Sarah Greenstein
Sister-in-law
Yetta Shulman
Sister
Saul Molk
Brother-in-law
Esther Gelb
Sister-in-law
Other relatives of Norman Millman are as follows: Name
Relationship
Morris Millman
Uncle
Benjamin Greenstein
Uncle
Ralph Millman
Father
On February 1, 1959, Norman executed declarations of trust under the Pennsylvania Uniform Gifts to Minors Act in favor of his son Jeffrey Millman and his daughter Laurie Jayne Millman. The declaration of trust executed by Norman Millman for the benefit of his minor son Jeffrey named Norman Millman as trustee and provided, inter alia: (a) That during the term of the trust and so long as Jeffrey is under 21 years of age, the trustee would deposit so much of the trust net income as does not exceed $600 per year in a bank for credit to the trustee as custodian for Jeffrey under the Pennsylvania Uniform Gifts to Minors Act. (b) The balance of the net income could be accumulated by the trustee in a separate, special account with the trustee authorized to apply, *58 in his sole discretion, so much of principal and income upon said account as necessary for the health, education (including college), maintenance, and support of Jeffrey. (c) On February 1, 1971, the principal of the trust would be returned to Norman Millman, the grantor, or his estate. (d) One-half of the special account would be distributed to Jeffrey on the latter's marriage and one-half to Jeffrey when he purchased a personal residence, with the further proviso that any balance would be distributed to Jeffrey upon attaining 30 years of age. (e) In the event of Jeffrey's death before distribution or termination, the entire trust would terminate with the principal returned to Norman Millman, the 1416 grantortrustee, and the special account to be paid to the estate of Jeffrey. The declaration of trust executed by Norman Millman for the benefit of his minor daughter Laurie Jayne contained provisions identical to those set out above, with the exception that Laurie Jayne's name was substituted for Jeffrey. In taxable years ended January 31, 1957, through January 31, 1966, the following advances were made by Benjamin individually and on behalf of his children Herman and Blanche, *59 and the following repayments were made by petitioner: Taxable year ended January 31
Advances
Repayments
Balance
1957
1958
1959
12,000
12,000
1960
12,500
24,500
1961
13,500
38,000
1962
40,000
78,000
1963
5,000
12,500
70,500
1964
10,000
19,000
61,500
1965
61,500
1966
6,000
9,000
58,500
In the taxable years ended January 31, 1958, through January 31, 1966, the following advances to and repayments by petitioner were made on behalf of Norman Millman, his wife Ronnie Millman, and in trust for their minor children Laurie Jayne Millman and Jeffrey Millman: Taxable year ended January 31
Advances
Repay-ments
Balance
1958
$ 3,000
$ 3,000
1959
10,000
13,000
1960
17,500
5,000
22,500[sic]
1961
30,000
55,500
1962
55,500
1963
5,000
60,500
1964
60,500
1965
60,500
1966
19,500
7,500
72,500
The advances made by Benjamin and Norman and on behalf of their children were evidenced by unsecured demand notes with interest payable at the rate of 10 percent per annum, with the exception of the advance by Benjamin Greenstein in the amount of $6,000 for the taxable *60 year ended January 31, 1966, which was evidence by an unsecured note in that amount dated March 16, 1965, payable 5 years from date with interest at the rate of 6 percent per annum and with the further exception that of the $19,500 of advances in the year ended January 31, 1966, by Norman Millman and Ronnie Millman in trust for their minor children Jeffrey and Laurie Jayne, $12,000 was evidenced by a note dated March 16, 1965, payable 5 years from the date with interest at the rate of 6 percent per annum. The principal of the debentures and purported notes issued by petitioner to Benjamin Greenstein, his children Blanche Greenstein and Herman Greenstein, and to Norman A. Millman and/or Ronnie Millman, his wife, in trust for their infant children Jeffrey Millman and Laurie Jayne Millman were subordinated to loans from the First Pennsylvania Banking and Trust Company in the years in issue as follows: Debenture Bonds Subordinated
Holder
1/31/63
1/31/64
1/31/65
1/31/66
Norman Millman, Trustee for
$ 4,000
$ 4,000
$ 4,000
$ 4,000
Laurie Jayne Millman
Norman Millman, Trustee for 4,000
4,000
4,000
4,000
Jeffrey Millman
Herman Greenstein
4,000
4,000
4,000
4,000
Blanche Greenstein
4,000
4,000
4,000
4,000
Carl Molk [1]
15,000
15,000
15,000
15,000
Ralph Millman [1]
9,000
9,000
9,000
9,000
*61 Notes Subordinated
Payee
Date of notice
Amount
Benjamin Greenstein
1/ 9/59
$ 5,000
Benjamin Greenstein
1/16/59
5,000
Benjamin Greenstein
2/24/59
5,000
Benjamin Greenstein
1/14/60
7,500
Benjamin Greenstein
4/ 7/61
10,000
Herman Greenstein
10/ 1/62
5,000
Blanche Greenstein
2/ 1/63 5,000
Subtotal Greenstein subordinations $42,500
Norman Millman, Trust for Laurie Jayne
1/28/58
3,000
Millman
1/ 9/59
5,000
1/30/59
5,000
1/14/60
7,500
4/29/60
5,000
7/15/60
5,000
4/ 4/61
10,000
Norman Millman, Trust for Jeffrey Millman
4/ 4/62 5,000
Subtotal Millman subordinations $45,500
Total notes subordinated $88,000 1417 On February 1, 1966, the maturity date of the debenture bonds last above-listed was extended to February 1, 1967, or the bonds redeemed as follows: Holder
Redeemed
Unredeemed
Carl Molk
$ 5,000
$10,000
Ralph Millman
2,000
7,000
Norman Millman, Trust for Laurie Jayne Millman
4,000
Norman Millman, Trust for Jeffrey Millman
4,000
Herman Greenstein
1,500
2,500
Blanche Greenstein 1,500
2,500
$10,000
$30,000
In *62 the taxable years January 31, 1958, through and including January 31, 1966, loans evidenced by demand notes were obtained by petitioner as follows: Loans evidenced by demande
notes obtained by petitioner
Name and balance
1/31/58
1/31/59
1/31/60
1/31/61
1/31/62
Daher Company
$19,000.00
Morris Greenstein
6,000.00
6,000
6,000
6,000
6,000
Saul Molk
1,500.00
1,500
1,500
1,500
1,500
Yetta Shulman
2,000.00
2,000
2,000
2,000
2,000
Esther M. Gelb
3,000.00
3,000
3,000
3,000
3,000
Ida Levin
12,000.00
12,000
12,000
12,000
12,000
Carter Hough, Jr.
10,000.00
10,000
10,000
10,000
10,000
Belgian American Bank A/C 10,000.00
10,000
10,000
10,000
10,000
J. H. Weinberger
Sarah and Morris Millman
2,500.00
2,500
6,000
6,000
6,000
Alan Birdman
Saul Shulman
Trans-Atlantic Hardware Co.
3,500.00
3,500
3,500
Ralph Millman
First Penna Co.
806.30
1/31/63
1/31/64
1/31/65
1/31/66
Daher Company
Morris Greenstein
6,000
6,000
6,000
6,000
Saul Molk
1,500
1,500
Yetta Shulmar
2,000
2,000
2,000
2,000
Esther M. Gelb
3,000
3,000
Ida Levin
12,000
12,000
12,000
Carter Hough, Jr.
Belgian American Bank A/C
10,000
10,000
10,000
10,000
J. H. Weinberger
Sarah and Morris Millman
6,000
6,000
6,000
6,000
Alan Birdman
10,000
10,000
10,000
10,000
Saul Shulman
1,500
2,500
2,500
2,500
Trans-Atlantic Hardware Co.
Ralph Millman
First Penna. Co.
*63 1418 None of the notes last above-listed were at any time subordinated to the claims of any creditor of petitioner. No demand for repayment of the advances to petitioner by Benjamin Greenstein, his children Blanche Greenstein and Herman Greenstein, or by Norman Millman and his wife Ronnie Millman for themselves and in trust for their minor children, Laurie Jayne Millman and Jeffrey Millman, has been made. At the date of trial, no further redemption of debentures had taken place. The principal balance on notes due as of January 31, 1966, from petitioner to Benjamin Greenstein and his children and to Norman and Ronnie Millman and/or in trust for their children, Laurie Jayne Millman and Jeffrey Millman, were not paid as of the date of trial. On their books, petitioner reflected "notes and loans payable officers" and notes and loans payable to the stockholders and their children as long-term debts. On November 23, 1963, petitioner's authorized capital was increased to $142,500, represented by 100 shares of Class A stock (no par, stated value $75 per share) and 1,800 shares of Class B (nonvoting, stated value $75 per share). On January 15, 1964, petitioner authorized a stock *64 dividend of 4 additional shares of Class B stock for each share of Class B stock held as of January 21, 1964. After this stock dividend, the stockholdings in the corporation were as follows: Shareholder
Class A
Class B
Benjamin Greenstein
50
750
Norman Millman
50
750 Petitioner has never declared or paid a cash dividend. On March 5, 1964, Benjamin transferred 100 shares of his Class B stock to Norman. Petitioner had the following net income before taxes in the taxable years ended January 31, 1957 to January 31, 1966, inclusive: Taxable year endedJanuary 31
Net earnings (beforetaxes)
1957
$ 15,794.92
1958
19,022.49
1959
24,504.58
1960
24,954.15
1961
23,139.70
1962
49,108.01
1963
52,424.02
1964
53,461.53
1965
25,916.17
1966
45,389.43
Petitioner's earned surplus and undivided profits on January 31, 1963, were $149,714.92. Petitioner's earned surplus and undivided profits on January 31, 1964 were $96,462.80, computed as follows: Analysis of earned surplus and undivided profits per books:
1. Balance at beginning of year
$149,714.92
2. Net income per books
53,461.53
3. Other increases Adjustment per audit - net 6,338.57
4. Total $209,515.02
Less:
5. Distributions (b) stock
90,000.00
6. Other decreases:
Federal income tax
20,271.18
Insurance
2,781.04
7. Total of lines 5 and 6 $113,052.22
8. Balance end of year (line 4 less line 7) $ 96,462.80
*65 Petitioner's earned surplus and undivided profits on January 31, 1965, were $59,150.21, computed as follows: Analysis of earned surplus and undivided profits per books:
1. Balance at beginning of year
$ 96,462.80
2. Net income per books 25,916.17
3. Total
$122,378.97
Less:
4. Distributions (b) stock
30,000.00
5. Other decreases:
Insurance
1,980.63
Federal income tax 31,248.13
6. Total decreases
$ 63,228.76
7. Balance end of year $ 59,150.21
Petitioner's earned surplus and undivided profits on January 31, 1966, were $86,414.52. Lines of credit available to petitioner from the First Pennsylvania Banking and Trust Company of Philadelphia were as follows: International Banking Department The maximum line of credit available against letters of credit and/or bankers' acceptances is specified below. The bank charged a commission of one-fourth of one percent of the amount of each letter of credit it issued for Trans-Atlantic Company and a commission of one-eighth of one percent per month for accepting drafts drawn under such letter of credit. 1419 Dates of line of credit
Amount of line of credit
September 1962 to March 1963
$ 50,000
March 1963 to January 1964
90,000
January 1964 to May 1965
110,000
May 1965 to August 1966
125,000
*66 Accounts Receivable Department
Dates of line of credit
Amount of line of credit
Interest rate
January 1959 to June 1960
$100,000
7 1/2% per annum
June 1960 to October 1962
125,000
7 1/2% per annum
October 1962 to May 1965
135,000
7% 1/2 per annum
May 1965 to August
145,000
7 1/2% per annum
The bank advances 80 percent of eligible accounts subject to the maximum amount of the line of credit available to Trans-Atlantic Company from time to time. In his statutory notice of deficiency, respondent disallowed claimed interest deductions by petitioner for the taxable years ended January 31 of 1964, 1965, and 1966 in the amounts of $14,062.56, $13,800, and $13,880, respectively. The claimed interest deductions disallowed are more specifically set out as follows: Debenture bonds
Taxable year ended
Blanche Greenstein
$ 399.96
$ 400.00
$ 399.96
Herman Greenstein
399.96
400.00
391.64
Norman Millman/Trust Jeffrey
399.96
400.00
400.00
Norman Millman/Trust Laurie Jayne 399.96
400.00
400.00
Total debenture interest disallowed
$ 1,599.84
$ 1,600.00
$ 1,591.60 Notes
Benjamin Greenstein
3,416.62
3,249.96
3,519.96
Blanche Greenstein
1,679.28
1,499.96
1,094.61
Herman Greenstein
1,316.82
1,400.12
1,083.87
Norman Millman/Trust Jeffrey
1,000.00
1,683.34
625.04
Norman Millman/Trust Laurie Jayne 5,050.00
4,366.62
5,964.92
Total note interest disallowed $12,462.72
$12,200.00
$12,288.40
Total note and debenture interest $14,062.56
$13,800.00
$13,880.00
disallowed
*67 Beginning about March 1959, the petitioner obtained financing for its operations from the First Pennsylvania Banking and Trust Company, Philadelphia, Pennsylvania. At the beginning of the business, during 1956, petitioner had used the Girard Trust Bank for institutional financing. Subsequently, petitioner obtained financing from Factors Corporation of America. Petitioner stopped using Factors Corporation of America because the interest rate charged by that institution was 13.2 percent and an increase to approximately 15 percent was proposed. The rate obtained from First Pennsylvania was initially 7 1/2 percent. This was later increased to 8 1/2 percent and is presently 10 1/2 percent. The purpose of obtaining the 6 percent and 10 percent loans from the various individuals from time to time was to satisfy immediate cash requirements of the business. For example, such loans were obtained in 1959 to pay off Factors Corporation of America. Loans were also obtained in order to pay income taxes or profitsharing contributions. At other times, cash was required immediately in order to obtain favorable terms for purchases of inventory. From time to time, petitioner's officers considered *68 placing a mortgage on the building owned by petitioner as a means of obtaining funds for the business. The building was appraised for mortgage purposes at a fair market value of $175,000 as of June 1965. The mortgage was not placed for various reasons, principally unsatisfactory conditions attached by the putative mortgagees, such as term of mortgage, interest rate, or tying business arrangements. The size of the mortgage considered was $100,000 to $120,000. During the taxable years ended January 31, 1964, 1965, and 1966, the following amounts were contributed to the profitsharing trust for petitioner's employees: 1420 Taxable year ended January 31
Contribution
Ner credit 1/31
1964
$19,158.75
$ 82,678.31
1965
16,063.46
105,033.58
1966
18,559.35
122,950.09
Interest was regularly paid on the 6 percent and 10 percent notes and on the debentures. The following amounts of interest were paid to holders of debentures and notes (exclusive of lending institutions) in the taxable years ended January 31, 1964, 1965, and 1966: Debentures
Holder
1/31/64
1/31/65
1/31/66
Carl Molk
$ 1,500.00
$ 1,500.00
$ 1,500.00
Ralph Millman
900.00
900.00
900.00
Blanche Greenstein
399.96
400.00
400.00
Herman Greenstein
399.96
400.00
400.00
Norman Millman, Trustee for Laurie 399.96
400.00
400.00
Jayne
Norman Millman, Trustee for Jeffrey 399.96
400.00
400.00
Total $ 3,999.84
$ 4,000.00
$ 4,000.00
*69 Notes
Payee
Blanche Greenstein
$ 1,679.24
$ 1,499.96
$ 1,094.61
Herman Greenstein
1,316.82
1,400.12
1,083.87
Benjamin Greenstein
3,416.62
3,249.96
3,519.96
Norman Millman, Trustee for Laurie Jayne
5,050.00
4,366.62
5,964.92
Norman Millman, Trustee for Jeffrey
1,000.00
1,683.34
625.04
Saul Shulman
250.28
250.08
250.08
Yetta Shulman
200.04
200.04
200.04
Alan Birdman
999.96
999.96
999.96
Belgian American Bank A/C J. Weinberger
450.00
450.00
450.00
Morris Millman
600.00
600.00
600.00
Morris Greenstein
600.00
600.00
600.00
Saul Molk
150.00
100.00
Esther Gelb
300.00
200.00
Estate of Ida Levin
1,200.00
1,200.00
200.00
Daher Co.
168.75
Total $17,212.96
$16,800.08
$15,757.23 On May 15, 1966, petitioner, Benjamin Greenstein, and Norman Millman entered into a stock repurchase agreement. This agreement provided for the purchase by petitioner of the stock owned by either Benjamin or Norman at death. The agreement sets forth a formula for valuing the stock and provides for a method of payment by the petitioner. The agreement applies only to the Class A and Class B stock. There were no agreements relating *70 to debentures or notes. The total of all liabilities and reserves of the petitioner as of January 31, 1966, was $500,287.68. The net book value of petitioner's real estate as of January 31, 1966, was $42,871.13. Since the fair market value of petitioner's real estate was $175,000, the actual net worth of petitioner as of January 31, 1966, is approximately $132,000 greater than its book net worth ($175,000 minus $42,871.13). Therefore the actual net worth of petitioner as of January 31, 1966, is approximately $368,000 ($236,414.52 plus $132,000). The ratio of all of petitioner's liabilities and reserves to its actual net worth as of January 31, 1966, is 1.36 to 1.0. Opinion Interest is deductible under section 163(a), [1] I.R.C. 1954. Of course, the amount sought to be so deducted must be paid for the use or forbearance of money. Deputy v. du Pont, 308 U.S. 488 (1940); i.e., a debtor-creditor relationship must exist between the payor and payee. Likewise it is necessary that the amount paid be true interest and not in reality a dividend. Moughon v. Commissioner, 1421 329 F. 2d 399 (C.A. 6, 1964), affirming a Memorandum *71 Opinion of this Court. The burden of proof herein is upon the petitioner and we find that it has failed to carry that burden. Although petitioner has outstanding promissory notes in the hands of many comparatively small lenders, the only evidences of indebtedness at issue herein are the notes and debentures held by the two sole stockholders of petitioner and their children. Even though the debentures and notes at issue are in such forms, we are convinced from the record herein that, in reality, from their inceptions they represented and still represent contributions to petitioner's capital. It is true that petitioner was not thinly capitalized during the years at issue and it is also true that the notes and debentures could have been paid at any time on demand or maturity, but other tests indicate that the advances which they represent were of an investment nature and were not intended to create a debtor-creditor relationship. Both the notes and the debentures were unsecured, the notes being payable on demand and the debentures *72 on their maturity date, February 1, 1966. No demand has ever been made for payment of any of the notes and the maturity date of such debentures as have not been redeemed has been extended. Both the notes and the debentures call for interest at the rate of 10 percent, which during the years at issue is in excess of the interest paid the lending institution with which petitioner had a more than ample line of credit. All such note and debenture "interest" has been promptly paid when due. The debentures issued to petitioner's two sole stockholders were very shortly thereafter gifted either in trust or directly to the stockholders' children for the obvious purpose of providing income for them. We think this fact alone indicates strongly that the advances represented by them were even at that time intended to be investments in petitioner's business. In fact, both advances made on notes and debentures were unsecured and were treated on petitioner's books as long-term indebtedness which is consistent with that intent. Perhaps more indicative of the investment character of these advances is the fact that the principal of both debentures and notes was, during the years at issue, subordinated *73 to the issuer of petitioner's line of credit. Petitioner contends this subordination should not be given weight here because it related only to principal and with respect to only one of its creditors. We think on the contrary that, because the record before us indicates the lending institution was by long odds petitioner's largest single creditor, and its line of credit necessary for the day-to-day conduct of petitioner's business, the subordination must be accorded weight in determining this issue. The subordination has the effect of lending a stock-like substance to the debentures and notes in controversy. See Foresun, Inc. v. Commissioner, 348 F. 2d 1006 (C.A. 6, 1965). We are likewise impressed with the fact that although petitioner has had a consistent and substantial profit during each year of its existence, no dividends have at any time been declared or paid in cash, although stock dividends have been paid on two occasions with proportionate transfers of petitioner's surplus to its capital account. Subsequent to a stock dividend declared by petitioner in 1964, one of petitioner's two equal stockholders transferred to the other a portion of one class of petitioner's *74 nonvoting stock held by him. Only at that point and for that reason can it be said that the debt-to-stock ratio of the shareholders became disproportionate. We cannot find that such a disproportion is of real significance. The voting stock held by each remained the same and was approximately in proportion to the holding of such stock by each. The record herein affords no other reason for this stock transaction than to lend the appearance of stock-debt disproportion. Sam Schnitzer, 13 T.C. 43 (1949), affd. 183 F. 2d 70 (C.A. 9, 1950). From a consideration of the entire record, we are satisfied that the advances herein represented by both the debentures and the notes were intended in their inception as contributions to the working capital of petitioner and certainly were treated as such during the years at issue. The notes and debentures are more like stock than evidences of indebtedness and, at least to that extent, petitioner has failed to carry its burden of proof. We therefore hold that the payments claimed to have been of interest were in reality nondeductible dividends during the years at issue. Decision will be entered under Rule 50. 1422 *75 Footnotes
1. On incorporation, this indebtedness was replaced by a debenture bond in the amount of $9,000 to Ralph Millman. ↩
2. On incorporation, the indebtedness of the partnership to Daher Company in the amount of $2,100 was credited to the benefit of Benjamin Greenstein and Carl Molk in the amounts of $1,046.24 and $1,053.76, respectively.↩
1. Not in issue in this case.↩
1. SEC. 163. INTEREST. (a) General Rule. - There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.↩