**William K. CARPENTER and Frances K. Carpenter, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 14211.**

United States Court of Appeals Third Circuit.

Argued March 21, 1963.

Decided Aug. 29, 1963.

As Revised Oct. 11, 1963.

734

Gordon W. Gerber, Philadelphia, Pa., (Kenneth W. Gemmill, Anthony L. Bartolini, Dechert, Price & Rhoads, Philadelphia, Pa., on the brief), for petitioners.

Gilbert E. Andrews, Atty., Dept. of Justice, Washington, D. C., (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before HASTIE, GANEY and SMITH, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

The petitioner William K. Carpenter, joined by his wife Frances K. Carpenter,[1] challenges as erroneous the Tax Court's decision that interest prepayments on loans made against an annuity policy were not deductible from gross income under § 163(a) of the Internal Revenue Code of 1954, 26 U.S.C. 1954 ed. § 163 (a). The decision of the Supreme Court in Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960), and that of this Court in Weller v. C. I. R., 3 Cir., 270 F.2d 294 (1959), cert. den. 364 U.S. 908, 81 S.Ct. 269, 5 L.Ed.2d 223 (1960), are dispositive of the contentions raised by the peti-

tioners.[2] However, it is argued that the present case is distinguishable on its facts from those cited. We disagree.

The matter came before the Tax Court on stipulations of fact, exhibits annexed thereto, and the testimony of the petitioner and one other witness. The relevant and material facts, as to which there is no dispute except as to the inferences drawn therefrom, are set out in the carefully detailed memorandum of the Tax Court. (62,176 P-H TAX CT. MEM.). We herein summarize only those facts which we deem essential to an adequate understanding of the questions raised.

The petitioner purchased from the Old Republic Life Insurance Company an annuity policy which provided for monthly payments to him slightly in excess of $10,000, the said payments to commence when he reached seventy years of age. At the time of the purchase, in January of 1954, the petitioner was not yet thirty-five years of age and had a life expectancy of approximately thirty-nine years. He was a man of considerable wealth and the recipient of substantial yearly income from a series of trusts,[3] the corpora of which would become distributable upon the death of his mother, who was then seventy years of age. Aside from other payments made by the petitioner, with which we are not here concerned, the single premium in the amount of $500,000 was paid as follows: $8,000 from the personal funds of the petitioner, and $492,000 from the proceeds of a loan in the said amount advanced by the Philadelphia National Bank under circumstances hereinafter described.

Pursuant to prearrangement, the petitioner deposited with the Bank his personal check in the amount of $8,000, payable to the Insurance Company, and contemporaneously therewith applied to

1. This petitioner is joined because she was party to a joint return.

2. See also Diggs v. C. I. R., 281 F.2d 326 (2nd Cir. 1960), cert. den. 364 U.S. 908.

81 S.Ct. 271, 5 L.Ed.2d 224; Pierce v. C. I. R., 311 F.2d 894 (9th Cir. 1962).

3. The trust income was in excess of $649,000 per year.

the Bank for a loan in the amount of $492,000. The loan was granted and the proceeds thereof, together with the proceeds of the check, were credited to the account of the Insurance Company. This loan was evidenced by a personal note and was secured by a pledge of the annuity policy. Thereupon the petitioner made application to the Insurance Company for a loan in an amount equal to the full loan value of the policy, and contemporaneously therewith deposited with the Bank his personal check in the sum of $19,680, payable to the Insurance Company and representing the prepayment of interest on the anticipated loan for the first year.

The latter application was granted, and at the direction of the petitioner the proceeds of the loan were paid directly to the Bank in repayment of its loan. The loan from the Insurance Company was evidenced by the usual annuity loan agreement, under the terms of which the petitioner agreed to repay the loan, together with interest thereon at the rate of 4% per annum. The agreement provided that there was no personal liability on the petitioner for the repayment of the loan and that the sole recourse of the Insurance Company was against the annuity contract which was pledged as collateral. The details of the transactions, outlined in the Tax Court's memorandum, are of no relevance here. The loan was never repaid.

The transactions hereinabove outlined were consummated on January 25, 1954, six days after the annuity policy had issued. Thereafter, on November 17, 1954, the petitioner prepaid to the Insurance Company seven years' interest in the amount of $170,154.33, thereby increasing the loan value of the policy to $605,000, the value it would have attained in its eighth year. At the same time the petitioner borrowed an additional sum of $113,000, which was equal to the full amount of the increment. This loan, like the earlier one, was not repaid and the ostensible indebtedness of the petitioner was equal to the full loan value of the annuity policy.

The petitioner, joined by his wife, filed an income tax return for the year 1954, therein claiming a deduction in the amount of $189,834.33, representing the full amount of the interest paid on the purported indebtedness to the Insurance Company. The deduction was disallowed by the Commissioner and the disallowance resulted in the assessment of a tax deficiency in the amount of $168,952.57. The assessment and the interest thereon were paid, and the proceeding before the Tax Court followed.

The Tax Court found that the loan transactions lacked commercial substance of economic benefit to the petitioner apart from the intended tax advantage. This finding of fact, upon which the ultimate decision of the Court rested, is herein challenged as clearly erroneous. The question for determination is whether the transactions in question, entered into in the taxable year of 1954, created an indebtedness within the meaning of § 163(a) of the Internal Revenue Code, supra. The answer is clearly in the negative. Knetsch v. United States, and Weller v. C.I.R., both supra.

The cited section of the code provides that there "shall be allowed as a deduction all INTEREST PAID * * * within the taxable year on INDEBTEDNESS." (Emphasis added). The term " 'interest on indebtedness' means compensation for the use or forbearance of money." Deputy v. du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416 (1940). The prepayments made by the petitioner do not meet the accepted definition. The petitioner had a right, under the "Loan Provisions" of the annuity contract, to "borrow" an amount equal to the cash surrender value of the policy without incurring any personal liability for the repayment of the loan.

The transactions, although in the form of loans and treated as such by the Insurance Company, were in substance advance payments against reserves for which the Company obtained a proportionate discharge of its obligations un-

der the contract. Orleans Parish v. New York Life Ins. Co., 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597 (1910); Williams v. Union Central Life Ins. Co., 291 U.S. 170, 179, 54 S.Ct. 348, 78 L.Ed. 711 (1934). These advances, under the facts and circumstances hereinabove summarized, did not create an "indebtedness" within the meaning of the statute. Weller v. C. I. R., supra. Absent such an indebtedness, the transactions lacked the commercial substance essential to a deduction under the statute.

It seems obvious that apart from the tax advantage the overall transaction was of no economic value to the petitioner. He paid to the Insurance Company a total of $689,834.33, representing premium and interest, and immediately withdrew $605,000, the full cash surrender value of the policy. The Company retained $84,834.33, the surplus. The petitioner received in return an annuity contract, the economic benefits of which were immediately exhausted by the advances. He purchased nothing more than a potential tax deduction having a cash value of $168,952.57, an amount equal to the deficiency assessment. The net gain to the taxpayer, if the claimed deduction had been allowed, would have been $84,118.44. The only economic benefit derived from the transaction was the possible tax reduction.

There is clearly little or no dispute as to the facts. The several arguments advanced by the petitioner are predicated on inferences consistent with his position but contrary to the clearly permissible inferences drawn by the Tax Court. The answer to these arguments is a simple one. We are required to consider the evidence in its entirety, bearing in mind the function of the Tax Court and the limited scope of appellate review. 26 U.S.C. § 7482(c) (1). It is the function of the Tax Court to weigh the evidence, draw the inferences of which the evidence is reasonably susceptible, and, if necessary, resolve conflicting inferences. Boehm v. Commissioner, 326 U.S. 287, 293, 66 S.Ct. 120, 90 L. Ed. 78 (1945); Commissioner of Internal Revenue v. Scottish American Inv. Co., 323 U.S. 119, 123, 124, 65 S.Ct. 169, 89 L.Ed. 113 (1944); Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346 (1938). The decision of the Tax Court, based upon its findings of fact, is conclusive unless it appears from an examination of the record that the findings of fact were clearly erroneous. Kisting v. C.I.R., 298 F.2d 264, 269 (8th Cir.1962); Commissioner of Internal Revenue v. Thompson, 222 F.2d 893, 895 (3rd Cir.1955); Ansley v. Commissioner of Internal Revenue, 217 F.2d 252, 256 (3rd Cir.1954). If the inferences drawn by the Tax Court are supported by substantial evidence, it is immaterial that different inferences might fairly be drawn from the same evidence. Ibid.

The petitioner contends that the disallowance of the deduction was arbitrary, capricious and discriminatory, and therefore should be nullified by this Court. The contention rests on evidence that the purchase of the annuity contract and the ensuing loan transactions were induced by the representations of the insurance broker, supported by rulings issued to taxpayers other than the petitioner, that interest payments on policy loans would be deductible. The question raised was heretofore considered by this Court and decided adversely to the petitioner's contention. Weller v. C.I.R., supra. The invitation of the petitioner to reconsider the question must be rejected.

The decision of the Tax Court will be affirmed.