WILLIAM K' CARPENTER, Petitioner-Appellee Below, Appellant, v. STATE TAX COMMISSIONER, Respondent-Appellant Below, Appellee,

(*May* 5, 1965)

WOLCOTT, C.J., and CAREY and HERRMANN, JJ., sitting.

*Converse Murdoch*, of Berl, Potter & Anderson, and *Gordon W. Gerber*, of Dechert, Price & Rhoads, Philadelphia, Pa., for appellant.

*Thomas Herlihy, III*, former Chief Deputy Atty. Gen., for appellee.

Supreme Court of the State of Delaware, No. 67, 1964

CAREY, Justice.

In this appeal from the Superior Court for New Castle County, appellant seeks the reversal of a decision disallowing a deduction under the Delaware Income Tax Statute, 30 *Del. C.* Sec. 1118(2), for interest allegedly paid in 1954 upon a loan secured by a single payment annuity policy. For a lengthier statement of facts than is needed here, see *State Tax Commissioner v. Carpenter*, Del.Super., 189 A.2d 411.

In January 1954 appellant, then about 34 years of age, purchased a single payment annuity from Old Republic Credit Life Insurance Co. for a premium of $500,000. The Company became bound to pay him a little over $10,000 per month when he reached the age of 69, or upon his prior death, to pay certain sums to his wife. Because he engaged in some extra hazardous activities, he was ineligible for life insurance and in fact had no insurance program at all, although he had substantial means and a large income. He was also a beneficiary under certain large trusts terminable upon the death of his mother who was then 70 years old.

When he bought the annuity, appellant paid $8,000 from his own funds, and borrowed the balance of $492,000 from a bank. He then paid off the bank loan by borrowing that same amount from Old Republic, using the annuity as sole security. At the same time he paid

Old Republic $19,680 as interest at 4% for one year. In November 1954, he paid Old Republic $170,154.33 as prepaid interest for 7 additional years. This amount included the interest on an additional loan of $113,000 which he borrowed a few days later from Old Republic. That sum was equal to the increase in cash surrender value of the policy from the end of its first year to the end of the eighth year.

On his tax return for 1954, appellant deducted the full amount of $189,834.33 as interest paid during the year. When the Tax Commissioner refused to approve this deduction, a hearing was held before the State Tax Board. On the basis of testimony and stipulations, the Board reversed the Commissioner, finding that the loans were not sham, but were authentic, had economic substance, and were not made for the sole purpose of reducing income taxes.

The Commissioner appealed to the Superior Court. In the opinion cited supra, that Court held that there was sufficient evidence before the Tax Board to support its finding that the purchase of the annuity was bona fide. At that time, the Court was under the impression that the Commissioner had abandoned a separate contention and therefore made no ruling upon it. This contention was that the interest deduction should not have been allowed since the appellant reported on a cash basis, and the interest was not paid in the taxable year. The Commissioner requested reargument, alleging that he had not intended to abandon this point. The Court, with a different Judge sitting, granted reargument limited to the validity of the $113,000 deduction. It later held that the evidence was insufficient to support the Board's finding as to this part of the payments. Carpenter has appealed from that holding.

The Delaware Statute, 30 *Del. C.* Sec. 1118(2), permits, for computation of income taxes, deduction of "[i]nterest paid or accrued by the taxable within the income year on his indebtedness." In contrast to the Federal law, there is no exception to that provision for payments made in connection with life insurance, endowments or annuity contracts. *Cf. Knetsch v. United States*, 364 Ill. 361, 81 S.Ct.

132, 5 L.Ed. 2d 128. Nevertheless, it is not herein suggested that the Courts cannot look into and determine whether a given transaction is a sham having no economic substance other than a tax savings. This Court is obliged to review the case on the law and the facts and draw our own inferences and conclusions thereon. *Nardo v. Nardo,* (unreported).

In its decision, the Tax Board made no distinction between the payment of $113,000 and the balance of the interest payments. In finding good faith as to the whole transaction, it pointed out appellant's financial situation, his prior lack of any insurance program, his inability to purchase life insurance, the financial advantage of buying an annuity at a young age and, most importantly, the great likelihood that appellant would be financially able to liquidate these loans well before reaching the maturity age of the policy, i. e., upon the death of his mother and the termination of the trusts. The Board pointed out the analogy between loans made on the security of an annual premium policy, the interest on which is deductible, and those made on the security of a single premium policy.

Most of the appellee's brief is devoted to a discussion of reasons why the original transaction should have been held a sham. We must decline to consider that question. The Board resolved it against the appellee, its determination was affirmed by the Superior Court, and no appeal therefrom was filed in this Court. For present purposes, therefore, we assume good faith in the purchase of the annuity and the original borrowing of most of the premium. It of course follows that payments of interest on that original loan was likewise bona fide. It is not argued that prepayments of interest cannot be deducted in the year they are made by a taxpayer who reports on the cash basis. Thus the present dispute arises for the sole reason that appellant borrowed back the sum of $113,000 almost immediately after making an advance payment of 7 years interest, including the interest on the $113,000.

The Court below held that there was insufficient evidence to justify the Board's finding of good faith as to the deduction of $113,000. In so ruling, the Court relied chiefly upon the facts that the

interest on that sum was paid at the same time as the balance of the interest for the 7 year period, thus showing an intent to immediately "borrow back" that sum, and that this amount was in fact returned to appellant within a very few days. The Court held that this part of the payment was a sham, that is, a mere trading of checks, and was not in truth a payment at all.

We think, on the contrary, that there is justification in the record for the Board's finding of good faith. We must keep in mind the established ruling that the original purchase, the borrowing of part of the premium and the payment of interest on that borrowed money were all bona fide, i. e., they had economic substance other than a tax savings. We think the Board's decision means that appellant was buying this annuity for future estate planning purposes at a time when it could be bought at lowest cost. The day would probably come when he would be able to pay off the loans and thereby create a valuable asset at a minimum cost to himself. Payment of several years interest on the original loan assured the continued existence of the policy for the period covered by the payment. By the terms of the contract, however, such payment of interest immediately created a sizable cash surrender or loan value. By borrowing back that loan value immediately and paying the interest upon it at once, he was enabled to accomplish his purpose through a minimum present outlay of cash. The fact that this arrangement left him with little or no present equity in the policy itself was of little importance, considering his basic objective described above. That objective was equally served and promoted by every part of the whole transaction.

No cases precisely in point have been brought to our attention. *Carpenter v. Commissioner of Internal Revenue*, 3 Cir., 322 F. 2d 733, dealt with this very annuity plan. There the Court upheld a finding by the Federal trier of fact that the whole plan was a sham; it accordingly was not obliged to consider the point raised here. Our Tax Board, as the State trier of fact, reached an opposite conclusion from the evidence; this disagreement, of course, is no reason for overturning its finding.

The ruling of the Court below must be reversed.