ROBERT S. AND MARYBETH JAGGARD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9645–79.     Filed February 12, 1981.

Robert S. Jaggard, pro se.
*Christy M. Pendley*, for the respondent.

OPINION

HALL, *Judge*: This case is before the Court on respondent's motion for summary judgment filed pursuant to Rule 121, Tax Court Rules of Practice and Procedure.

At the time they filed their petition, petitioners resided in Oelwein, Iowa. Respondent determined deficiencies in petitioners' 1975 and 1976 income tax of $1,019.10 and $909.84, respectively. The sole issue in this case is whether petitioners are subject to the self-employment tax imposed by section 1401.[1]

Petitioners make no assertions, which, if proved, would establish either that they are not subject to the self-employment tax imposed by section 1401 or that they are exempt from the tax under section 1402(h) or any other section. Instead, petition-

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

ers rely on two constitutional arguments in support of their position. First, petitioners assert that the exemption for members of certain religious sects or divisions under section 1402(h)[2] violates the establishment clause of the First Amendment.[3] Second, petitioners assert that for purposes of section 1402(h), they are similarly situated with members of Amish sects (the Amish) and should be accorded the same exempt status.[4]

Respondent, in his motion for summary judgment and accompanying memorandum, argues that both of petitioners' claims have already been resolved generally by this Court in *Palmer v. Commissioner*, 52 T.C. 310 (1969), and specifically against petitioners in *Jaggard v. Commissioner*, a Memorandum Opinion of this Court, 37 T.C.M. 377, 47 P-H Memo T.C. par. 78,078 (1978), affd. 582 F.2d 1189 (8th Cir. 1978), cert. denied 440 U.S. 913 (1979) (*Jaggard I*). Accordingly, respondent asserts that petitioners should be collaterally estopped from relitigating these claims. Alternatively, respondent contends that petitioners are collaterally estopped from arguing that section 1402(h) is unconstitutional based on the establishment clause of the First Amendment, and that petitioners' equal protection claim can be dismissed by summary judgment as a matter of law. For the reasons set out below, we agree with respondent's alternative position.

Collateral estoppel is a judicial tool designed to avoid repetitious litigation of legal issues involving the same party or his privy and to put the limited resource of judicial time to its best economic use. As explained by the Supreme Court, collateral estoppel applies "where the matter raised in the second suit is identical in all respects with that decided in the first proceeding

---

[2] Sec. 1402(h) is currently sec. 1402(g). Sec. 1402(h), as it read in 1975 and 1976, is reproduced on page 227 *infra*.

[3] Petitioners make this argument by stating that they "do not accept the contention that taxation of some and exemption for others on the basis of 'religious' grounds can be done without doing violence to the First Amendment."

[4] At a hearing on respondent's summary judgment motion, petitioner Robert S. Jaggard described his argument as an "equal protection, due process argument." The equal protection clause of the 14th Amendment applies to State, and not to Federal actions. *Jewell v. City of Covington*, 425 F.2d 459 (5th Cir. 1970), cert. denied 400 U.S. 929 (1970). The due process clause of the Fifth Amendment, however, embodies the principles of equal protection. *Bolling v. Sharpe*, 347 U.S. 497 (1954); *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973); *United States v. Thoresen*, 428 F.2d 654 (9th Cir. 1970). For purposes of this opinion, we will refer to petitioners' argument as an equal protection argument.

and where the controlling facts and applicable legal rules remain unchanged." *Commissioner v. Sunnen*, 333 U.S. 591, 599–600 (1948). In the event the second proceeding involves some issues which were decided in the first proceeding and some which were not, collateral estoppel only applies to those issues which were previously determined.

Until recently, application of the doctrine of collateral estoppel was limited by the requirement of strict mutuality between the parties to the first and second proceedings. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Although strict mutuality is no longer required,[5] in this case, the parties presently before the Court are the same as the parties who were before the Court in *Jaggard I*. In *Jaggard I*, we held that section 1402(h) did not violate the establishment clause of the First Amendment. Petitioners have not claimed that either the controlling facts or the applicable legal rules have changed since our decision in *Jaggard I*. Therefore, petitioners are collaterally estopped from arguing that section 1402(h) violates the establishment clause of the First Amendment.[6]

Respondent also argues that on the basis of our decision in *Jaggard I*, petitioners are collaterally estopped from making their equal protection argument because it is a new theory, and a new theory does not bar the application of collateral estoppel. We disagree. Taxpayers are not collaterally estopped from raising new constitutional questions which were not resolved in the earlier proceeding. *Neeman v. Commissioner*, 26 T.C. 864 (1956), affd. 255 F.2d 841 (2d Cir. 1958), cert. denied 358 U.S. 841

---

[5]*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971); *Starker v. United States*, 602 F.2d 1341 (9th Cir. 1979). See also Note, "Nonmutual Collateral Estoppel in Federal Tax Litigation," 33 Vand. L. Rev. 953 (1980); L. George, "Sweet Uses of Adversity: *Parklane Hosiery* and the Collateral Class Action," 32 Stan. L. Rev. 655 (1980).

[6]The Fifth Circuit has held that taxpayers such as petitioners do not have any standing to assert the establishment clause of the First Amendment. *In re Ward v. Commissioner*, 608 F.2d 599 (5th Cir. 1979), affg. a Memorandum Opinion of this Court, 38 T.C.M. 150, 48 P-H Memo T.C. par. 79,039, cert. denied 446 U.S. 918 (1980). In its holding, the Fifth Circuit relied on *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976), a case dealing with standing in Article III courts, not Article I courts such as the Tax Court. Nothing in the Fifth Circuit's opinion, however, indicates to us that any meaningful distinction should be drawn based on the constitutional derivation of the particular court involved.

(1958). Petitioners' equal protection argument is not merely a variation on an old theme but rather constitutes a new issue.

Respondent's reliance on *Leininger v. Commissioner*, 86 F.2d 791 (6th Cir. 1936), in support of the applicability of the doctrine of collateral estoppel, is misplaced. In *Leininger*, the issue in the first proceeding was the extent of the taxpayer's interest in a partnership. Once the taxpayer's interest was judicially determined, the taxpayer was collaterally estopped from raising the same issue on a new theory in a suit involving a later tax year unless he could show that the controlling facts or applicable legal principles had changed.

Although we find that petitioners are not collaterally estopped from arguing that section 1402(h) violates the due process clause of the Fifth Amendment, we nevertheless agree with respondent that, as a matter of law, petitioners' claim is meritless.

Rule 121(b), Tax Court Rules of Practice and Procedure, provides that summary judgment shall "be rendered if the pleadings, answers to interrogatories, depositions, admissions and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."

The Fifth Amendment provides that "No person shall be * * * deprived of life, liberty or property, without due process of law." The Supreme Court has held that the due process clause of the Fifth Amendment embodies the principles of equal protection. *Bolling v. Sharpe*, 347 U.S. 497 (1954). Petitioners' argument is premised on the claim that they are being denied equal protection when the Amish, who are not entitled to exemptions under section 1402(h), are given exemptions while at the same time petitioners are denied exemptions. Essentially, petitioners argue that similarly situated taxpayers must be treated consistently.

Section 1402(h), on its face, does not violate equal protection. *In re Ward v. Commissioner*, 608 F.2d 599 (5th Cir. 1979), affg. a Memorandum Opinion of this Court, 38 T.C.M. 150, 48 P-H Memo T.C. par. 79,039, cert. denied 446 U.S. 918 (1980). *Henson v. Commissioner*, 66 T.C. 835 (1976); *Palmer v. Commissioner*, *supra*. Petitioners' argument is that section 1402(h), as applied by the Government, violates equal protection.

The question of whether similarly situated taxpayers must be

treated consistently is not easily answered. In *Davis v. Commissioner*, 65 T.C. 1014, 1022–1023 (1976), we stated:

It has long been the position of this Court that our responsibility is to apply the law to the facts of the case before us and determine the tax liability of the parties before us; how the Commissioner may have treated other taxpayers has generally been considered irrelevant in making that determination. *Bernard E. Teichgraeber*, 64 T.C. at 456; *Eli D. Goodstein*, 30 T.C. 1178, 1190–1191 (1958), affd. 267 F.2d 127 (1st Cir. 1959); *Minchin v. Commissioner*, 335 F.2d 30, 32–33 (2d Cir. 1964), affg. a Memorandum Opinion of this Court; *Carpenter v. Commissioner*, 322 F.2d 733, 736 (3d Cir. 1963), affg. a Memorandum Opinion of this Court; *Gerstell v. Commissioner*, 319 F.2d 131 (3d Cir. 1963), affg. per curiam a Memorandum Opinion of this Court; see *Bookwalter v. Brecklein*, 357 F.2d 78, 82 (8th Cir. 1966); *Weller v. Commissioner*, 270 F.2d 294, 298–299 (3d Cir. 1959), affg. 31 T.C. 26 and 31 T.C. 33 (1958); *Shakespeare Co. v. United States*, 389 F.2d 772, 777 (Ct. Cl. 1968); *Knetsch v. United States*, 348 F.2d 932, 940 (Ct. Cl. 1965), cert. denied 383 U.S. 957 (1966); see also *Dixon v. United States*, 381 U.S. 68, 72–76 (1965); *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 183–184 (1957). Any change in that position would have widespread ramifications in the administration and application of the Federal tax laws and in the conduct of our work. The volume of the transactions that would have to be considered would present an unusual problem. Over 11,000 new cases were commenced in this Court in the past year [1975], and although many of those cases are settled, the Court still has a herculean task to keep abreast of its caseload. Were we to embrace the principles urged by Mr. Davis, the task would be magnified. Every trial would be extended, for it would then become necessary to allow the petitioner to inquire into the Commissioner's treatment of other similarly situated taxpayers. * * * Although the implementation of the position advocated by Mr. Davis would present many problems, those problems may not be insurmountable, and the notion of equal justice has strong appeal in our society and might lead to the conclusion that his position should ultimately be adopted. Yet, a full appreciation of the ramifications of this matter makes abundantly clear that it should be approached cautiously. In accordance with sound judicial administration, such a matter should only be considered when necessary to do so in order to decide the case before us.

In this case, we have concluded that it is unnecessary for us to face and decide the question of whether a duty of consistency should be applied to the actions of the Commissioner. * * *

See also *Davis v. Commissioner*, 69 T.C. 716 (1978); *Cocker v. Commissioner*, 68 T.C. 544 (1977); *Mid-Continent Supply Co. v. Commissioner*, 67 T.C. 37 (1976), affd. 571 F.2d 1371 (5th Cir. 1978). But see *Sirbo Holdings, Inc. v. Commissioner*, 476 F.2d 981 (2d Cir. 1973), remanding 57 T.C. 530 (1972); *International Business Machines Corp. v. United States*, 170 Ct. Cl. 357, 343 F.2d 914 (1965), cert. denied 382 U.S. 1028 (1966); *Exchange*

*Parts Co. of Fort Worth v. United States*, 150 Ct. Cl. 538, 279 F.2d 251 (1960).

In the present case, as in *Davis*, it is unnecessary for us to decide whether a duty of consistency should be applied to the Commissioner. For, even drawing every factual inference in favor of petitioners, it is clear that their case is premised upon an exercise of definitional legerdemain that cannot survive this motion for summary judgment.

The relevant portions of section 1402(h) provide:

(h) MEMBERS OF CERTAIN RELIGIOUS FAITHS.—

(1) EXEMPTION.— Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is *conscientiously opposed to acceptance of the benefits of any private or public insurance* which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). Such exemption may be granted only if the application contains or is accompanied by—

\*     \*     \*     \*     \*     \*     \*

and only if the Secretary of Health, Education, and Welfare finds that—

\*     \*     \*     \*     \*     \*     \*

(D) *it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living,* and

[Emphasis added.]

The focus of petitioners' claim is that members of certain Amish sects enjoy the advantages of an insurance program and are exempt from the self-employment tax while petitioners are denied such an exemption because they have insurance. In support of their assertion that the Amish do derive benefits from an insurance program, petitioners refer to a text by E. Schwieder & D. Schwieder entitled "A Peculiar People: Iowa's Old Order Amish," at 40–43 (1975) (hereinafter *Schwieder*). For purposes of this summary judgment motion, we will assume that the Amish may be exempt under section 1402(h) from the self-employment tax[7] and that the type of mutual aid program described in

---

[7] See H. Rept. 213, 89th Cong., 1st Sess. (1965), 1965–2 C.B. 733, 739.

*Schwieder* exists in Amish communities. Petitioners argue that such mutual aid is tantamount to a form of "private or public insurance." Accordingly, petitioners believe that the Amish cannot, by definition, be "conscientiously opposed to acceptance of the benefits of any private or public insurance."

If we were to accept petitioners' definition of "private or public insurance," then no member of any religious sect or division would ever be exempt from the self-employment tax under section 1402(h). The mutual aid that petitioners wish to characterize as private or public insurance is more properly characterized for purposes of section 1402(h) as a practice of the Amish to provide for their dependent members. To qualify for exempt status under this statute, the Secretary of Health, Education, and Welfare must find that the members of the religious sect or division to which the applicant belongs provide for their dependent members. Admittedly, this mutual aid is a type of insurance but it is clearly not the type of insurance contemplated within the statute's "private or public insurance" language as that phrase is used in section 1402(h)(1). Since petitioners do not argue or assert any facts which, if true, would establish that they are entitled to an exemption under section 1402(h), petitioners' situation is not the same as the Amish. It is therefore unnecessary to determine whether similarly situated taxpayers must be treated consistently.[8] Since respondent has demonstrated that he is entitled to prevail as a matter of law, on facts not genuinely in dispute, his motion for summary judgment is granted.

> *An appropriate order and decision will be entered.*

---

[8]It may also be that petitioners lack any standing to raise this type of equal protection claim under the analysis of *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26 (1976). See note 6 *supra.*