WILLIAM J. LEVITT AND SIMONE H. LEVITT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levitt v. Commissioner
Docket No. 1684-87
United States Tax Court
T.C. Memo 1993-294; 1993 Tax Ct. Memo LEXIS 297; 66 T.C.M. (CCH) 40; July 8, 1993, Filed *297 For Simone H. Levitt, petitioner: Robert S. Fink and Bryan C. Skarlatos. For respondent: Iris K. Rothman. FAY
FAY
MEMORANDUM OPINION FAY, Judge: This case was assigned to Special Trial Judge D. Irvin Couvillion pursuant to section 7443A(b)(4) [1] and Rules 180, 181, and 183. The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE COUVILLION, Special Trial Judge: The matter before the Court is a motion by petitioner Simone H. Levitt (Mrs. Levitt) for leave to file a motion to vacate a decision of this Court which was entered on February 6, 1990. In the notice of deficiency, respondent determined deficiencies in Federal income taxes and an addition to tax against petitioners as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a) 1973
$ 3,309,557.00
$ 165,477.85
1975
2,355,478.00
--  1976
4,251,077.61
--  *298 A decision was entered pursuant to a written stipulation of settlement which was filed and made part of the record of this case. In the decision, petitioners were decreed liable for deficiencies in Federal income taxes of $ 2,355,478 and $ 4,122,608.73, respectively, for 1975 and 1976; an overpayment in tax for 1973 in the amount of $ 312.08; and no addition to tax under section 6653(a) for 1973. The motion by Mrs. Levitt for leave to file the motion to vacate the decision was filed well in excess of 90 days after the decision was entered. [2]
*299 The issues to be decided here are: (1) Whether the decision should be vacated on the ground that this Court lacked jurisdiction over Mrs. Levitt, and (2) if this Court had jurisdiction over Mrs. Levitt, whether the decision should be vacated on the ground that it resulted from a "fraud on the Court". The issue of this Court's jurisdiction over Mrs. Levitt was considered in another case involving the years 1977 through 1981. In that case, prior to entry of a decision, on motion by Mrs. Levitt, this Court held it had no jurisdiction over Mrs. Levitt because she had not filed a petition with this Court, nor had she timely ratified the petition filed by her husband, William J. Levitt (Mr. Levitt). Levitt v. Commissioner, 97 T.C. 437 (1991) (Levitt I). Mrs. Levitt's motion to vacate here raises a similar jurisdictional question for the years 1973, 1975, and 1976. Some of the facts were stipulated. Those facts, with the annexed exhibits, are made part hereof by reference. At the time the petition was filed, Mr. and Mrs. Levitt were residents of the State of New York. At the time Mrs. Levitt's motion was filed, both she and Mr. Levitt continued to *300 be residents of the State of New York. Petitioners were married in 1969. Both had been married previously. Mr. Levitt was an established, successful real estate developer at the time of their marriage. He established his business after World War II and gained national acclaim for developing affordable housing in towns and communities, some of which were named after him as "Levittown". Mrs. Levitt had been involved in the operation of art galleries but did not engage in such business after she married Mr. Levitt. Throughout their marriage, Mrs. Levitt was not involved in Mr. Levitt's business. She devoted most of her time as a social hostess and was in charge of operating their household, known as "La Collene". The household operation itself was a sizeable operation, consisting of a staff of some 20 persons, including a butler and a chef. Mr. and Mrs. Levitt have never separated or divorced and were living together at the time the motion in this case was heard. In recent years, Mr. Levitt has sustained significant financial reverses, and these reverses have strained the marital relationship between him and Mrs. Levitt. During her previous marriage, Mrs. Levitt filed separate *301 Federal income tax returns. In 1989 and 1990, while married to Mr. Levitt, Mrs. Levitt filed separate returns, reporting income from her own investments in those years. Joint individual income tax returns (Forms 1040) in the names of William J. and Simone Levitt were filed for taxable years 1973, 1975, 1976, 1977, 1978, 1979, 1980, and 1981. Mr. Levitt signed his own name and Mrs. Levitt's name to the returns. Except for the 1973 return, which is in dispute, Mrs. Levitt did not sign these returns, nor did she have knowledge of the returns when they were filed. Mrs. Levitt was not aware that Mr. Levitt had filed any joint income tax returns until May 1987, when she learned that one joint return might have been filed for an unspecified prior year. At that time, she questioned Mr. Levitt about the filing of a joint return and was told that he had only shown her as a dependent on the return, and that she should not be concerned about it. During and subsequent to the audit of the returns for 1973, 1975, and 1976, Mr. Levitt signed his own and Mrs. Levitt's name to eight waivers or consents to extend the statute of limitations on assessment. Mrs. Levitt did not sign these waivers *302 or consents and had no knowledge of their execution. On October 23, 1986, respondent mailed the notice of deficiency upon which this case is based. The notice was addressed to Mr. and Mrs. Levitt at Mr. Levitt's office address and determined the deficiencies in Federal income taxes and an addition to tax for 1973, 1975, and 1976 in the amounts shown above. Mr. Levitt received the notice of deficiency. Mrs. Levitt did not receive it. Mr. Levitt contacted a law firm and arranged for a petition to be drafted for filing with this Court. Mr. Levitt signed his own name and Mrs. Levitt's name to the petition and filed it on January 20, 1987. Mrs. Levitt did not sign the petition, nor did she have knowledge of the petition. The attorneys who drafted the petition likewise did not sign the petition. The parties agreed, as noted earlier, that the petition in this case was not signed by Mrs. Levitt, but her name was signed by Mr. Levitt. Respondent contends that Mr. Levitt was authorized to sign for Mrs. Levitt, and, if he did not have such authority, Mrs. Levitt nevertheless ratified the petition. Respondent's ratification argument is based upon several documents which were entered *303 into evidence and bear the purported signatures of Mrs. Levitt. Mrs. Levitt vigorously denied that the signatures on these documents were hers. These documents have been identified by the parties as the "disputed documents" and consist of the following: (1) A joint motion for continuance of this case dated March 7, 1988 (two signed copies); (2) an undated stipulation of settlement (two signed copies), which was filed with the Court on March 7, 1988; (3) petitioners' response to respondent's request for production of documents dated January 20, 1988; (4) the certificate of service which accompanied petitioners' response to the request for production of documents, also dated January 20, 1988; and (5) the 1973 joint Federal income tax return for Mr. and Mrs. Levitt. The stipulated decision, entered on February 6, 1990, was based upon the stipulation of settlement filed earlier on March 7, 1988 (one of the disputed documents). The second page of the stipulated decision of February 6, 1990, bears the purported signatures of petitioners along with "Respondent's Computation for Entry of Decision", dated February 1, 1990, which also is accompanied by a second page bearing the purported *304 signatures of petitioners. Mrs. Levitt did not sign these documents. Mr. Levitt signed her name. Mrs. Levitt did not learn of the decision until December 1990, after she was advised that an assessment had been made against her. Mrs. Levitt contends that this Court lacked jurisdiction to enter a decision binding upon her because she did not file or authorize the filing of a petition on her behalf and did not ratify the petition filed by Mr. Levitt. Mrs. Levitt further contends, in the alternative, that the decision should be vacated because it was the result of a fraud on the Court by Mr. Levitt. Sections 7481 and 7483 provide that a decision of this Court becomes final, in the absence of a timely filed notice of appeal, 90 days from the date the decision is entered. As a general rule, this Court is without jurisdiction to vacate a decision after the decision becomes final. However, this Court has jurisdiction to vacate a decision that has become final where the Court lacked jurisdiction when the decision was entered. Billingsley v. Commissioner, 868 F.2d 1081, 1084-1085 (9th Cir. 1989); Abeles v. Commissioner, 90 T.C. 103, 105 (1988). *305 This Court also has jurisdiction to vacate a decision that was entered as a result of fraud on the Court. Billingsley v. Commissioner, supra at 1085; Toscano v. Commissioner, 441 F.2d 930, 933 (9th Cir. 1971). Since the decision in this case became final, in the absence of an appeal, upon the expiration of the time allowed for filing a notice of appeal, petitioner must establish that this Court lacked jurisdiction to enter the decision or that a fraud on the Court exists. Senate Realty Corp. v. Commissioner, 511 F.2d 929, 931 (2d Cir. 1975), affg. an Order of this Court; Kenner v. Commissioner, 387 F.2d 689, 690-691 (7th Cir. 1968), affg. an Order of this Court; Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1001-1002 (1978). The burden of proof is on the party filing the motion to vacate. See Brannon's of Shawnee, Inc. v. Commissioner, supra at 1002. Where a joint notice of deficiency is issued and only one spouse signs the petition, the nonsigning spouse must ratify the petition *306 and must intend to become a party to the case for this Court to have jurisdiction over the nonsigning spouse. Levitt v. Commissioner, 97 T.C. 437, 441 (1991); Abeles v. Commissioner, supra at 108; Brooks v. Commissioner, 63 T.C. 709, 716 (1975); see also Rule 60(a)(1). Absent ratification and the intent to become a party to the case by a nonsigning spouse, this Court lacks jurisdiction over the nonsigning spouse who, "never having petitioned the Court in this case, is not a party to this case". Abeles v. Commissioner, supra at 109. The parties agree that Mrs. Levitt did not sign the petition. Mr. Levitt signed his wife's name to the petition, as well as his own. He did not inform Mrs. Levitt that he had received a notice of deficiency or that he had filed the petition. Mrs. Levitt first argues that respondent is collaterally estopped from contending that Mr. Levitt was authorized to sign the petition on her behalf because of the Court's decision in Levitt I. Collateral estoppel is a judicial tool designed to avoid repetitious litigation of legal *307 issues involving the same party or his privy and to put the limited resource of judicial time to its best economic use. Collateral estoppel applies where the matter raised in the second suit is identical in all respects with that decided in the first proceeding, and where the controlling facts and applicable legal rules remain unchanged. Jaggard v. Commissioner, 76 T.C. 222, 223 (1981) (citing Commissioner v. Sunnen, 333 U.S. 591, 599-600 (1948)). In Coors v. Commissioner, 60 T.C. 368, 390 (1973), affd. 519 F.2d 1280 (10th Cir. 1975), this Court stated: "That portion of the doctrine of res judicata barring later litigation of that which could have been raised in the former proceeding must be viewed in the light of the principle set forth in Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931), that each taxable year is separate and distinct." In Commissioner v. Sunnen, 333 U.S. 591, 597-599 (1948), the Supreme Court held that each tax year gives rise to a different cause of action, thus confirming the *308 rule that taxation is based upon annual accounting periods. In Commissioner v. Sunnen, supra at 599-600, the Court pointed out that the doctrine of collateral estoppel "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding". The Court further stated that "if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case". Id. at 601 (fn. ref. omitted). This case involves different tax years from those which were involved in Levitt I. The facts in the two cases are separable even though they may be similar. Moreover, at least one factual issue in this case is totally different from that which was at issue in Levitt I. In this case, respondent contends Mr. Levitt was authorized to file a petition in this Court on behalf of Mrs. Levitt, whereas, in Levitt I, respondent contended that Mrs. Levitt "did not file a petition or ratify the petition that Mr. Levitt filed". Levitt v. Commissioner, 97 T.C. at 440. *309 Respondent, therefore, in Levitt I, contended that Mr. Levitt was not authorized to file a petition on behalf of Mrs. Levitt, whereas, in this case, respondent contends Mr. Levitt had such authority. The issue differs; consequently, respondent is not collaterally estopped from contending Mr. Levitt had the authority to file the petition in this case on behalf of Mrs. Levitt. There is no evidence that Mrs. Levitt directly authorized Mr. Levitt to file the petition in this case on her behalf. Respondent contends that Mr. Levitt had implied authority to file the petition on Mrs. Levitt's behalf because he was responsible for all their business, financial, and tax matters, which included the authority to file petitions in this Court. This included authority to sign Mrs. Levitt's name on checks drawn on a bank account in Mrs. Levitt's name which was maintained for operation of their extensive household. In addition, almost for their entire marriage, Mr. Levitt filed Federal joint income tax returns, and, over this period of time, Mrs. Levitt either knew or should have known that these returns were being filed in her name, even though she did not sign the returns. Mrs. Levitt contends *310 she had no knowledge that any Federal income tax returns had been filed in her name over the years or that any returns for her were even necessary because she earned no income and owned no income-producing properties during those years which would have necessitated the filing of Federal income tax returns either jointly or separately. Mrs. Levitt, however, stipulated and admitted in her testimony to being record owner of several publicly traded stocks, as well as the owner of interest-bearing savings accounts. She knew that such assets produced income which had to be reported for Federal income tax purposes. The Court rejects her contention that, because Mr. Levitt never gave her the stock certificates and never remitted to her the dividends and interest, she was absolved from filing Federal income tax returns. Moreover, Mrs. Levitt suffers with a serious credibility problem. While she claimed she owned no income-producing assets during any years prior to 1989, on the 1989 and 1990 Federal income tax returns which she filed as married, filing separately, she reported interest and dividend income of $ 47,051 and $ 75,458, respectively, for these 2 years. When questioned as to *311 how she suddenly acquired assets producing revenues in these amounts, she testified she had sold a ring for $ 250,000 or $ 300,000 and sold stocks which "were my stock, and I had the certificates". Since she used most of the proceeds from the sale of the ring to pay her attorneys, it is apparent to the Court that Mrs. Levitt owned substantial assets in her name prior to 1989 which produced the interest and dividend income reported on her 1989 and 1990 income tax returns. Therefore, Mrs. Levitt's testimony that she owned no income-producing properties during the years 1973 through 1988 is simply not credible or reliable. Another more serious credibility problem arises over inconsistent positions Mrs. Levitt has taken over the years with respect to stock in a corporation known as International Community Corporation (ICC), which either she and/or Mr. Levitt owns. During 1987, a consent judgment approximating $ 11 million was agreed to and entered against Mr. Levitt in favor of the State of New York acting on behalf of The Levitt Foundation, a charitable organization which had been organized by Mr. Levitt. The State of New York had asserted claims for self-dealing, fraud, and conversion *312 against a number of defendants, including Mr. and Mrs. Levitt, who were directors of The Levitt Foundation, and ICC, contending that ICC had been used as a conduit to take money out of The Levitt Foundation for the benefit of Mr. and Mrs. Levitt. After the consent judgment was entered, Mrs. Levitt's deposition was taken in that proceeding to determine whether she owned any assets, including stock in ICC, which could be held subject to the consent judgment against Mr. Levitt. Mrs. Levitt, in that deposition, denied ownership of any interest in ICC and, based on her testimony, was released from liability as a transferee. However, in Mrs. Levitt's subsequent testimony at the hearing before this Court in Levitt I, Mrs. Levitt took the position that she owned 50 percent of the stock in ICC and, at the hearing in this case, Mrs. Levitt admitted filing a suit in New York State court claiming ownership of all the stock in ICC. When questioned about the inconsistency of her positions on the ICC stock in this Court with the testimony in the earlier deposition by the State of New York, Mrs. Levitt testified: I was not under oath. I was just asked a question and Mr. Shaw, who was my *313 counsel at the time, gave to me an impression that I should not say it's mine [the ICC stock] because then the Attorney General would * * * go after me for the money [the consent judgment]. I don't know what was going on between them. I had begin to lost trust on my husband. [sic] I didn't want to be the villain that was going to put him into his trouble.
It is obvious to the Court that Mrs. Levitt's position with respect to the ICC stock has shifted to suit whatever crisis is at hand. Mrs. Levitt effectively discredited herself as a witness in this case. However, despite this conclusion, the Court is not willing to conclude that all of these facts, even if they occurred as contended by respondent, vested Mr. Levitt with the authority to file a petition in this Court on behalf of Mrs. Levitt. While the facts recited above may well have vested implied authority in Mr. Levitt to file Federal income tax returns on behalf of Mrs. Levitt, the nexus between that authority and the authority to file a petition on her behalf in this Court is simply not there. The fact remains that Mrs. Levitt did not know the petition in this case had been filed. In Abeles v. Commissioner, 90 T.C. at 108 n.8, *314 this Court noted that, even if the husband had implied authority for all financial and tax matters involving the husband and the wife, the action of the husband in filing a petition in this Court on behalf of the wife, in the absence of ratification by the wife, is insufficient to confer jurisdiction by this Court over the wife. Therefore, the Court here rejects respondent's contention that, because Mr. Levitt was responsible for all tax and financial matters of himself and Mrs. Levitt, and because of Mrs. Levitt's contrary and inconsistent positions with regard to certain properties, he had the implied authority to file the petition in this case on behalf of Mrs. Levitt. The Court next addresses the question whether Mrs. Levitt ratified the petition. Respondent contends Mrs. Levitt ratified the petition, either by affirmative acts or by failing to disavow Mr. Levitt's actions taken on her behalf. To show affirmative acts of ratification, respondent relies on various documents (the disputed documents) submitted into evidence which bear the purported signatures of Mrs. Levitt. Both Mr. and Mrs. Levitt disputed the signature of Mrs. Levitt on the disputed documents. The parties *315 each introduced an expert witness with respect to the authenticity of the signatures on the disputed documents. Respondent's expert witness, Charles Eggleston, examined the disputed documents and compared them to acknowledged examples of Mrs. Levitt's signature from years prior to and after the dates the disputed documents were signed. In his expert report, Mr. Eggleston concluded that it is "highly probable" that Mrs. Levitt signed two copies of the joint motion for continuance, two copies of the stipulation of settlement, and "probable" that she signed petitioners' response to respondent's request for production with the accompanying certificate of service and the 1973 tax return. Mr. Eggleston explained that, as used in his report, "highly probable" means that the evidence was very persuasive but fell just short of that necessary for certainty, and that "probable" was one step below "highly probable" in terms of weight of the evidence. Mr. Eggleston acknowledged consistent differences between the signatures on the disputed documents with the acknowledged or undisputed examples of Mrs. Levitt's signature. He reconciled these differences by comparing the signatures on the disputed *316 documents with the signatures of Mrs. Levitt on a series of checks purportedly signed by Mrs. Levitt on a bank account in her name, which was maintained for purposes of paying the Levitts' household expenses. At the time Mr. Eggleston compared the signatures on these checks with the signatures on the disputed documents, Mr. Eggleston believed that the signatures on these checks were the unquestioned and acknowledged signatures of Mrs. Levitt. Because the signatures on the checks were consistent with those on the disputed documents, Mr. Eggleston concluded it was "highly probable" that most of the disputed documents had been signed by Mrs. Levitt. Later, Mr. Eggleston was informed that the signatures on the checks were not the acknowledged signatures of Mrs. Levitt but were disputed by her. He reviewed the signatures again and concluded that Mrs. Levitt had "definitely" signed those disputed documents in which he earlier concluded it was "highly probable" that they had been signed by her. Mr. Eggleston admitted that there were differences between the signatures on the checks and the signatures on the disputed documents with the signatures on other documents which were acknowledged *317 to be those of Mrs. Levitt. These differences are clearly evident even to one who is not trained in handwriting analysis. While Mr. Eggleston was satisfied that these differences were not material to his conclusion, the Court is not satisfied that these differences were properly explained and reconciled by him. In the Court's view, there are significant differences between the signatures of Mrs. Levitt on the disputed documents with those signatures submitted to the Court which were the acknowledged signature of Mrs. Levitt. The Court, accordingly, does not accept Mr. Eggleston's conclusion. Charles Hamilton, Mrs. Levitt's expert, also examined the disputed documents, comparing the signatures thereon to the same examples of Mrs. Levitt's acknowledged signature which Mr. Eggleston had examined. Mr. Hamilton concluded that the signatures on the disputed documents were definitely not Mrs. Levitt's handwriting. Mr. Hamilton noted the same differences between the acknowledged signatures and the disputed ones which Mr. Eggleston had observed. While Mr. Eggleston was of the opinion that these differences, for unexplained reasons, were not material, Mr. Hamilton was of the opinion *318 that these differences were material and irreconcilable. Mr. Hamilton was of the further opinion that Mrs. Levitt did not sign the checks which Mr. Eggleston had earlier assumed bore the acknowledged signatures of Mrs. Levitt. The testimony of Mr. Levitt and Mrs. Levitt, along with Mrs. Levitt's expert witness, satisfies the Court that Mrs. Levitt did not sign the checks which were submitted into evidence and which were examined by the two experts. The signatures on these checks are not the same as the signatures on the disputed documents. On this record, the Court accepts the opinion of Mr. Hamilton and concludes that Mrs. Levitt did not sign the disputed documents. Moreover, even if Mrs. Levitt did in fact sign the disputed documents, all of these documents, except the 1973 income tax return, were filed with the Court well in excess of 90 days after the notice of deficiency was issued. If these documents were signed by her and can be considered as a ratification of the petition by her, the ratification would not be timely because, under Rule 41(a), "No amendment [to the petition] shall be allowed after expiration of the time for filing the petition * * * which would involve *319 conferring jurisdiction on the Court over a matter which otherwise would not come within its jurisdiction under the petition as then on file." Levitt v. Commissioner, 97 T.C. at 442-443. [3] The signing of the 1973 income tax return by Mrs. Levitt, long before the notice of deficiency was issued, cannot be construed by any stretch of the imagination as authority for the filing of a petition in this Court by Mr. Levitt on behalf of Mrs. Levitt. The Court concludes, therefore, that Mrs. Levitt did not ratify the petition. *320 Having concluded that Mrs. Levitt neither authorized the petition nor subsequently ratified it, the Court lacked jurisdiction over her when the February 6, 1990 decision was entered. Accordingly, it is not necessary to consider Mrs. Levitt's other argument, that the decision was the result of fraud upon the Court. "[A] judgment entered without jurisdiction is void and 'is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside'." Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1001 (1978) (citing Jordon v. Gilligan, 500 F.2d 701, 704 (6th Cir. 1974)). Since the Court lacked jurisdiction over Mrs. Levitt at the time the February 6, 1990 decision was entered, the decision, insofar as it relates to Mrs. Levitt, is a legal nullity. Accordingly, the Court will grant the motion for leave to file, file the motion to vacate, and vacate the February 6, 1990, decision insofar as it relates to Mrs. Levitt. In this opinion, the Court holds that there was no jurisdiction over Mrs. Levitt because she never petitioned this Court (by signing the petition *321 or authorizing anyone to sign on her behalf) and never ratified the petition filed by Mr. Levitt. This Court acquired jurisdiction over Mrs. Levitt only for the purposes of determining whether this Court had jurisdiction over her at the time the decision was entered. The Court concludes there was no jurisdiction over her at that time. This Court did not acquire general jurisdiction over Mrs. Levitt because she never filed either a petition, an amended petition, or ratified the petition purportedly filed in her name. Accordingly, this Court has no jurisdiction to make findings with respect to certain ancillary allegations by Mrs. Levitt in her motion for leave to file and her motion to vacate (1) that related to the filing of income tax returns and consents to extend the periods of limitations for 1973, 1975, and 1976; (2) that the notice of deficiency with respect to her is invalid; and (3) that she is an innocent spouse under section 6013(e). See Abeles v. Commissioner, 90 T.C. 103, 109 (1988). Indeed, as noted by this Court in Levitt v. Commissioner, 97 T.C. 437, 443 (1991): Here, however, our obligation is to *322 find facts that are necessary to determine whether Mrs. Levitt is a party to this case. Inasmuch as we have concluded that Mrs. Levitt is not a party to this case, any additional or unnecessary findings would have no binding effect in this or any subsequent proceeding. If we were to resolve the disputed inference concerning Mr. Levitt's authority against Mrs. Levitt, she would be free to contend that we were without jurisdiction to make such findings.
This Court, therefore, makes no findings or conclusions with respect to Mrs. Levitt's ancillary allegations. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code as amended. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Under the circumstances herein, the motion for leave to file the motion to vacate is a prerequisite to filing a motion to vacate. The motion to vacate was lodged with the Court concurrently with the filing of the motion for leave. Respondent did not object to the motion for leave to file but objected to the motion to vacate. In deciding whether to grant or deny motions for leave, this Court may consider the merits of the underlying motion to vacate to determine whether further proceedings are appropriate. Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999↩ (1978). Accordingly, the Court here considers the merits of Mrs. Levitt's motion to vacate.
3. The Court dismisses respondent's contention that the ratification, even after 90 days from issuance of the notice of deficiency, relates back to the date the petition was filed. In order for a ratification to relate back to the date the original petition was filed, there must be clear evidence that the party filing the initial petition had the authority to file the petition on behalf of the taxpayer and the taxpayer intended to petition the Court at that time. See Brooks v. Commissioner, 63 T.C. 709, 713 (1975); Kraasch v. Commissioner, 70 T.C. 623, 628↩ (1978). Here, the Court finds that Mrs. Levitt never intended to file a petition in this Court; therefore, the purported ratification by the disputed documents would not relate back to the date the petition was filed.